# CHARLESTON.

## STATE v. CAIN.

### March 4, 1875.

1875.
January Term.

1. An indictment was found by the grand jury attending the circuit court of Wood county, on the 10th day of June, 1874, against John Cain, in these words, to-wit:

"State of West Virginia, Wood county, to-wit:

In the circuit court of said county.

The jurors of the State of West Virginia, in and for the body of the county of Wood, and now attending the said court, upon their oaths present, that John Cain, on the first day of December, A. D. one thousand eight hundred and seventy three, in the said county, unlawfully did sell and furnish to Michael Toole, spirituous liquors, wine, porter, ale, beer, and drinks of like nature, on Sunday, contrary to the form of the statute, in such cases, made and provided, and against the peace and dignity of the State." HELD. That said indictment is not good, after verdict. upon a motion in arrest of judgment, under any statute of West Virginia.

2. Statutes which amend each other by implication, are not within the provision of section thirty of the sixth article of the constitution, and it is not essential that they even refer to the acts, or section, which, by implication, they amend.

3. The first section of chapter ninety-nine of the acts of the Legislature, of 1872, in connection with section seven of said chapter, so far as it prescribes the penalty for violating said first section of the said act of the Legislature, and so far as it forbids the sale, without a license, of intoxicating liquors to be drank in, upon, or about, the building or premises where sold, or to be drank in any adjoining room, building or premises, or other place of public resort connected with said building, that far and to that extent operates a repeal of the provisions of said first section of chapter thirty-two of the Code, of 1868, and no further ; and that as to all sales of spirituous liquors or other liquors or drinks whether by

wholesale or retail, which are forbidden to be made by the first section of said chapter thirty-two, without a license for the purposes or uses not specified in the first section of said chapter ninety-nine of the acts of the Legislature of 1872-3, the first section of said chapter thirty-two of the Code, still remains in force.

Writ of error operating as a *supersedeas* to a judgment of the circuit court of Wood county, rendered on the 3d day of July 1874, in a cause therein then pending on an indictment against John Cain. The cause reaches this Court by petition of the respondent, Cain.

The case is stated in the opinion of the Court.

*Walter S. Sands* for the appellant.

*Attorney-General Mathews* for the State.

HAYMOND, PRESIDENT.

On the 1st day of December 1873, the grand jury of the circuit court of the county of Wood found an indictment against the defendant (John Cain), which is in these words, viz: "State of West Virginia, Wood county, to-wit: in the circuit court of said county. The jurors of the State of West Virginia, in and for the body of the county of Wood, and now attending the said court, upon their oaths present, that John Cain, on the first day of December, A. D. one thousand eight hundred and seventy-three, in the said county, unlawfully did sell and furnish to Michael Toole spirituous liquors, wine, porter, ale, beer and drinks of like nature, on Sunday, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

Afterwards, at the June term, 1874, of said court, the defendant appeared and filed his plea of not guilty to the indictment, upon which plea issue was duly joined.

On the 8th day of June 1874, a jury was duly empaneled and sworn to try the issue joined, &c., in said case, and on the next day the jury rendered their verdict of guilty against the defendant, and fixed his fine at fifty dollars.

91

On the 3d day of July, 1874, and before judgment was rendered upon the verdict, the defendant, by his attorney, moved the court in arrest of judgment upon said verdict upon the ground of defects in the indictment, and other reasons hereinafter stated, but the court overruled the motion and rendered judgment against the defendant, for the fine and costs. The defendant excepted to the judgment of the court in overruling his motion in arrest of judgment. The bill of exception filed in the cause states the grounds upon which defendant asked the court to arrest judgment upon the verdict as follows, viz:

*First.* Because the indictment does not charge an offense against any statute of the State in force at the time the same was found, or at the time the alleged offense therein is charged or proved to have been committed, it not being charged in the indictment that the defendant sold the liquor therein mentioned without a State license therefor at the time as required by sections first and second of chapter thirty-two of the code of West Virginia, or that the defendant had violated any of the. conditions of a bond required of persons procuring licenses by section twelve of chapter thirty-two, of the code of West Virginia.

*Second.* Because the provisions of chapter ninety-nine of the acts of the Legislature of West Virginia, passed April 4, 1873, entitled "An act to provide against the evils resulting from the sale of intoxicating liquors in the State of West Virginia," operate as a repeal by implication of so much of chapter thirty-two of the code of West Virginia as pertains to the sale of intoxicating liquors, and there was, therefore, no statute in force at the time of the commission of the offense as laid in the indictment, or at the time the alleged offense charged in the indictment was proved to have been committed, prohibiting or punishing the sale of intoxicating liquors on Sunday.

*Third.* Because the indictment does not set out the particular place in the county of Wood where the sale therein charged was committed.

This case is now before us upon a writ of error obtained by the defendant from this Court. The evidence or facts proved are not certified in any form, and do not appear in the record, and we cannot see or know what was proved at the trial. There was no demurrer to or motion made to quash the indictment. The question now to be determined by this Court is, does the indictment charge the defendant, Cain, with an indictable offense, or in other words do the charges contained in the indictment amount, in a legal sense, to a violation of any statute of West Virginia. Owing to the confused state of the legislation upon the subject of selling "spirituous liquors," &c., and "intoxicating liquors," without a license at the time the indictment was found, and for some time before, the question to be determined is very difficult of satisfactory solution. That the question is of the deepest interest and importance, is apparent. In order to arrive at a correct conclusion of the question before us, it is indispensable that the constitution of the State and the legislation bearing upon the subject shall be brought in review and considered.

The thirtieth section of the sixth article of the constitution of the State provides that "no law shall be revised, or amended, by reference to its title only, but the law revised, or section amended shall be inserted at large in the new act."

The first section of chapter thirty-two of the Code of 1868 was in force at the adoption of the Constitution and at the finding of the indictment, unless it was repealed by legislative enactment after the adoption of the Constitution and before the finding of the indictment, and provides that "No person without a State license therefor shall keep a hotel or tavern, or furnish drinks or refreshments at a public theatre, or sell, offer, or expose for sale, at wholesale or retail, spirituous liquors, wine,

porter, ale, or beer, or any drink of a like nature; and the sale or delivery of a less quantity than five gallons at any one time shall be deemed a sale thereof at retail. And all mixtures or preparations known as 'bitters' or otherwise, which will produce intoxication, whether they be patented or not, shall be deemed spirituous liquors within the meaning of this section."

The third section of same chapter provides that any person violating the said first section shall forfeit not less than ten nor more than one hundred dollars.

The fourth section of the same chapter provides that said chapter shall not be construed to require any person having license to sell spirituous liquors or wine at retail to obtain another license to sell porter, ale, or beer, or any drink of like nature, at the same place; or to prohibit a druggist from selling without license, alcohol, spirituous liquors, or wine, in good faith for medical or manufacturing purposes. And in any prosecution against a druggist for selling alcohol, spirituous liquors, or wine, without a license therefor, if the sale be proved, it shall be presumed that such sale was in violation of this section unless the contrary be shown.

The seventh section of the same chapter provides that "The State license mentioned in the first section shall be issued only when authorized by the board of supervisors of the county, except that when the act, occupation, or business for which such State license is necessary is to be done or carried on in a city, village or town, the license shall be issued only when authorized under the charter of said city, village, or town, by the council thereof."

The twelfth section of same chapter provides, "Nor shall the board of supervisors, or city, village, or town council, authorize any license to sell spirituous liquors, wine, porter, ale, beer, or drink of like nature, until the applicant shall have given bond, with security, to be approved by the board or council, in the penalty of five hundred dollars, conditioned that he will not permit any

person to drink to intoxication on any premises un-
der the control of such applicant; and will not sell or
furnish any intoxicating drink to any person who is in-
toxicated at the time, or who is known to him to have
the habit of drinking to intoxication, or who is under
the age of twenty-one years ; and that he will not sell or
furnish such drink to any person on Sunday.   Every
person violating any of the conditions of the said bond
shall be guilty of a misdemeanor, and on conviction there-
of shall be fined for each offense not less than ten nor
more than one hundred dollars.   And he and his sureties
shall be liable in a suit or suits thereon for every such
fine and costs until the penalty of the said bond is ex-
hausted."

The thirteenth section of the chapter provides that :
"Every justice, upon information, made under oath or
affirmation, that any person is selling, or offering or ex-
posing for sale spirituous liquors, wine, porter, ale, beer,
or drink of like nature, contrary to the provisions of
this chapter, whether such person have a license or not,
shall issue his warrant requiring the person suspected to
be brought before him for examination," &c.

The fourteenth section provides that the board or
council who authorized any license mentioned in the
first section may revoke the same upon petition, &c.

The fifteenth section provides that : "Every certifi-
cate issued by an assessor as aforesaid, if it be to author-
ize the keeping of a hotel or tavern, or a bowling alley,
billiard table or bagatelle, or any table of like kind,
shall specify the house in which it is to be kept ; and to keep
the same in a different place shall be deemed a violation
of this chapter.   Every certificate to sell at wholesale or
retail spirituous liquors, wine, porter, ale, or beer, or
any drink of a like nature, or to furnish drinks or re-
freshments at a public theatre, shall specify the house
where they are to be sold, and a sale at any other place
shall be held to be a sale without license.   Other licenses

shall be deemed co-extensive with the county, but of no effect beyond the limits of the county."

The sixteenth section provides for the transfer of a State license, which is limited to a particular house, to another place, &c.

The seventeenth section provides for the assignment of the license mentioned in the first section to another, under certain restrictions, &c.

This was substantially the condition of the legislation upon the subject of the sale of spirituous liquors, &c., at the time the present constitution was adopted and took effect, which was on the 22d day of August, 1872.

The first Legislature that convened under this constitution commenced its session in November, 1872, and on the 4th day of April, 1873, it passed an act entitled, "An act to provide against the evils resulting from the sale of intoxicating liquors in the State of West Virginia." This act is chapter ninety-nine of the acts of the Legislature of 1872 and 1873.

The first section of this chapter provides that "it shall be unlawful for any person or persons, by agent or otherwise, without first having obtained a license therefor, to sell, in any quantity, intoxicating liquors to be drank in, upon, or about the building or premises where sold, or to sell such intoxicating liquors to be drank in any adjoining room, building or premises, or other place of public resort connected with said building: Provided, that no person shall be granted a license to sell or give away any intoxicating liquors without first giving a bond to the municipality or authority authorized by law to grant licenses, which bond shall be made payable to 'the State of West Virginia,' and be in the penal sum of not less than three thousand dollars, and in the discretion of the court may exceed that sum, with at least two good and sufficient securities, who shall be free holders and residents of the county, conditioned that they will pay all damages to any person or persons which may be inflicted upon them, either in person or property, or means

of support, by reason of the person so obtaining a license, selling or giving away intoxicating liquors; and such bond may be sued and recovered upon for the use of any person or persons or their legal representatives, who may be injured by reason of the selling of intoxicating liquors by the person or his agent so obtaining the license."

The second section of said chapter provides "it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors behind screens, 'frosted' windows, or any other device designed or intended to protect the seller or buyer from public observation."

The third section provides that "it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors to minors, unless upon the written order of their parents, guardians or family physicians, or to persons intoxicated, or to persons who are in the habit of getting intoxicated."

The fourth section provides that "All cases where intoxicating liquors are sold in violation of this act, shall be taken, held and declared to be common nuisances, and all rooms, taverns, eating houses, bazaars, restaurants, drug stores, groceries, coffee houses, cellars, or other places of public resort, wherein intoxicating liquors are sold in violation of this act, shall be shut up, and abated as public nuisances, upon the conviction of the keeper thereof, and shall be punished as herein provided."

The fifth section provides that "every person who shall, by the sale of intoxicating liquors, with or without a license, cause the intoxication of any other person, shall be liable for and compelled to pay a reasonable compensation to any person who may take charge of and provide for such intoxicated person, and four dollars per day in addition thereto for every day such intoxicated person shall be kept in consequence of such intoxication, which sums may be recovered in an action of debt before any court of justice having competent jurisdiction.

The sixth section provides that "every husband, wife, child, parent, guardian, employer, or other person who shall be injured in person or property, or means of support by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name, severally or jointly, against any person who shall, by selling or giving intoxicating liquors, have caused the intoxication in whole or in part, of such person or persons, &c."

The seventh section provides that "for every violation of the provisions of the first, second and third sections of this act, every person offending shall forfeit and pay a fine of not less than twenty dollars, nor more than one hundred dollars, and be imprisoned in the jail of the county not less than ten days, nor more than thirty days, and pay the costs of prosecution, &c."

The eighth section provides that: "The giving away of intoxicating liquors, or other shift or device, to evade the provisions of this act, shall be deemed and held to be an unlawful selling within the provisions of this act."

The ninth section provides that: "For the payment of all fines, costs and damages assessed against any person or persons, in consequence of the sale of intoxicating liquors as provided in section six of this act, the real estate and personal property of such person or persons of every kind shall be liable, and such fines, costs and damages shall be a lien upon such real estate until paid."

The tenth and last section of the act provides that: "The penalty and imprisonment mentioned in the seventh section of this act, may be enforced by indictment in any court of record having criminal jurisdiction; and all pecuniary fines or penalties provided in any of the sections of this act (except the fifth and sixth) may be enforced and prosecuted for before any justice of the peace of the proper county in an action of debt in the name of the State of West Virginia, as plaintiff; and in case of conviction the offender shall be committed to the jail of the county until the judgments and costs are

fully paid; and the justice or court in which the conviction is had shall issue a writ of *capias ad satisfaciendum* therefor; and justices of the peace shall also have jurisdiction of all actions arising under the fourth and fifth sections of this act, where the amount in controversy does not exceed one hundred dollars, such actions to be prosecuted in the name of the party injured or entitled to the debt or damages provided for in said sections." This act does not in its title or body expressly refer to, or profess to amend said chapter thirty-two of the code or any section thereof, or to repeal said chapter or any part thereof. It does not prohibit the sale of intoxicating liquors on Sunday more than any other day of the week. The first section of said act it will be observed does not prohibit the sale of intoxicating liquors to be carried away from the place of sale, but only prohibits the sale, without a license therefor, in any quantity, intoxicating liquors to be drank in, upon, or about the building or premises where sold, or to sell such intoxicating liquors to be drank in an adjoining room, building or premises, or other place of public resort connected with said building.

By reference to the first section of the thirty-second chapter of the code it will be seen that, that section is much more comprehensive in its character as to selling spirituous liquors, &c.—it does not confine itself to the place where sold, &c., and it includes sales by wholesale and retail and other things not covered by the first section of said chapter ninety-nine, or any other section thereof. No part of said chapter ninety-nine, contains any provision in relation to sales of intoxicating liquors by druggists and others as specified in section four of said chapter thirty-two. The penalty and punishment for violating section one of said chapter ninety-nine, is greater than the penalty for violating the first section of said chapter thirty-two, imprisonment is added to the fine and the minimum fine is increased from $10 to $20. All the acts prohibited by the condition of the bond

92

of the seller prescribed by the twelfth section, are prohibited and provided against with perhaps greater stringency by the third section of chapter ninety-nine, except selling intoxicating liquors on Sunday, and the minimum fine for the acts prohibited by said third section is increased from $10 provided in the said twelfth section to $20, and imprisonment is added. The words "intoxicating liquors" employed in said chapter ninety-nine is more comprehensive in its meaning than the words "spirituous liquors" employed in the first section of said chapter, but they may not comprehend all the drinks or bitters covered by the first section of chapter thirty-two. The board of supervisors was abolished by the constitution of 1872, and the twelfth section of said chapter thirty-two therefore became and remained inoperative as to the board of supervisors, for want of a tribunal authorized to execute it, or act under it in place of the board of supervisors, unless it can be maintained that the county court, by authority of law, takes the place of the board of supervisors in the twelfth section. Statutes which amend others by implication are not within the provision of section thirty of the sixth article of the constitution which I have quoted; and it is not essential that they even refer to the acts or sections which, by implication, they amend. Cooley on Con. Lim., 152, and the numerous decisions there cited in note 1. Sedgwick on Stat. and Con. Law, pages 125, 126 and 127, says: "It has been repeatedly declared that every statute is, by implication, a repeal of all prior statutes, so far as it is contrary and repugnant thereto, and that without any repealing clause; and, on this principle, when an act prohibited an unlicensed person from selling rum under a penalty of twenty dollars for each offense, and a subsequent statute prohibited the same act, on pain of forfeiting not more than twenty dollars, nor less than ten dollars for each offense, the old statute being absolute and imperative, and the other allowing a latitude of dis-

cretion, it was declared that they were essentially and substantially inconsistent, and the former statute was held to be repealed. So, in general, when a statute imposes a new penalty for an offense, it repeals, by implication, so much of a former statute as establishes a different penalty. So Lord Mansfield held that the statute 5th Geo., 127, inflicting a fine not exceeding one hundred pounds and three months' imprisonment for seducing artificers, was repealed by a subsequent act, 23 Geo. II c. 13, inflicting a penalty of five hundred pounds and twelve months' imprisonment for the same offense. So, on the same principle a statute is impliedly repealed by a subsequent one revising the whole subject matter of the first. And in case of a statute revising the common law, the implication is equally strong. So when an act is an offense at common law, and the whole subject is revised by the legislature, the common law is repealed. So in Pennsylvania it has been said that when two statutes are so flatly repugnant that both cannot be executed, and we are obliged to choose between them, the latter is always deemed a repeal of the earlier. This rule applies with equal force to a case of absolute and irreconcilable conflict between different sections or parts of the same statute. The last words stand, and others which cannot stand with them go to the ground. But though it is thus clearly settled that statutes may be repealed by implication and without any express words, still the leaning of the courts is against the doctrine, if it be possible to reconcile the two acts of the legislature together." "It must be known," says Lord Coke, "that for as much as acts of parliament are established with such gravity, wisdom and universal consent of the whole realm, for the advancement of the commonwealth, they ought not, by any constrained construction out of the general and ambiguous words of a subsequent act to be abrogated; ' sed hujus modi statuta solemnitate et prudentia edita, (as Fortesque, speaks, chap. 18, folio 21) ought to be maintained and supported with a benign and favorable construction." So

1875.
January Term.

State
v.
Cain.

in this country, on the same principle, it has been said that laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject; and it is, therefore, but reasonable to conclude that the legislature, in passing the statute, did not intend to interfere with or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable; and hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law, if the two acts may well subsist together. So in Pennsylvania it has been decided that repeals by implication are not favored, and it has been declared that one act of assembly is held to repeal another by implication only in cases of very strong repugnancy, or irreconcilable inconsistency. So again in a recent case in New York, it is said that the repeal of a statute by implication is not favored. Unless the latter statute is manifestly inconsistent with and repugnant to the former, both remain in force. So, too, in Massachusetts, to annul the prior statute, the latter act must be clearly repugnant to the former, and the implication of repeal will not be favored. So this Court held, in the case of *Forqueran v. Donnally*, 7 W. Va., 114, that "statutes are not considered to be repealed by implication, unless the repugnance between the new provision and a former statute be plain and unavoidable." In the case of *Commonwealth v. Josiah Herrick*, 6 Cush. (Mass.), 465, it was held that "the Statute of 1850, chapter 232, section 1, amending the Revised Statutes, chapter 47, sections 1, 2 and 3, by striking out the word 'spirituous,' wherever it occurs, and inserting in place thereof the word 'intoxicating,' does not repeal these sections of the revised statutes." In this case, Shaw, chief-justice, in delivering the opinion of the court, on page 467, says: "This section does not alter the penalty, upon a first or a second conviction, but leaves the law, in this respect, unchanged." Again he says: "The act in question is quite peculiar in its form; professing

to amend a former statute, which had been long in force, by striking out one term and inserting another." Again he says, on page 468: "The word 'intoxicating' includes a larger class of cases than 'spirituous.' They bear the relation to each other of genus and species; all spirituous liquors are intoxicating, but all intoxicating liquors are not spirituous. It has the same effect as if a new act had been passed, providing, that other cases shall be included in the class of acts, punishable by a prior statute, specifically referred to or named. The latter is not repugnant to the former, and, therefore, does not repeal it by implication. They may well stand together and both be in force.' " In the case of *Fox's Admr. v. Commonwealth,* 16 Gratt., 10, Judge Moncure, in delivering the opinion of the court, says, in quoting from Dwarris on Statutes, with approval: "It is, therefore, an established rule of law that all acts *in pari materia* are to be taken together, as if they were one law; and they are directed to be compared in the construction of statutes, because they are considered as framed upon one system, and having one object in view. And the rule, it is said, equally applies, though some of the statutes may have expired, or are not referred to in the others." See also the case of *Forqueran v. Donnally,* above cited. In the case in 16 Gratt., before cited, Judge Moncure, on page eleven, quotes from Sedgwick, much of that which I have quoted, and says: "The following authorities are cited in support of these views, and seem fully to sustain them: *Daviess v. Fairbairn,* 3 How., U. S. R. 636; 16 Barbour, (N. Y.) 15; 12 Mass., 537; 5 Pick, 168; 10 *Id.* 37; 11 *Id.* 350. In *Bartlett v. King,* 12 Mass., 555, 563, the court said: 'A subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as reason and common sense, operate to repeal the former; according to the cases of *Rex v. Cator,* 4 Burr. R. 2026, and *The King v. Davis,* 1 Leach. Crown cases, 306." When there

are two acts on the same subject, the rule is to give effect to both, if possible. But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first. When there are two acts of the Legislature on the same subject, and the latter act embraces all the provisions of the first, and also new provisions, and imposes different or additional penalties, the latter act operates, without any repealing clause, as a repeal of the first. A former statute is impliedly repealed so far as the latter statute is plainly intended as a substitute for it. Bishop on Stat. Crimes, section 158, and, see same author, sections 154, 155, 156, 157, 159, 160, 161, 162. A number of rules stated in the opinion of the court in said case in 16 Gratt., are referred to here as far as applicable. Upon a careful examination of said chapter ninety-nine of the acts of the Legislature of 1872, and especially the first section thereof, and a comparison therewith, of the said first section of chapter thirty-two of the Code of 1868, I have brought my mind to the conclusion that said chapter ninety-nine does not revise the whole subject matter of the first section of said chapter thirty-two, and was not evidently intended as a substitute for it altogether. But that the first section of said chapter ninety-nine, does operate a repeal of section one of said chapter thirty-two in so far as the first section of chapter ninety-nine embraces subjects contained in the first section of chapter thirty-two, and no further. In other words, the first section of said chapter ninety-nine, so far as it forbids the sale without a license, of intoxicating liquors to be drank in, upon, or about the building or premises, where sold, or to be drank in any adjoining room, building or premises, or other place of public resort, connected with said buildings, that far and to that extent it operates a repeal of the provisions of the first section of chapter thirty-two, and no farther, and that as to all sales of spirituous liquors and other liquors or drinks, whether by wholesale or retail, which are forbidden to be

made by the first section of chapter thirty-two, without a license, for purposes or uses not specified in the first section of said chapter ninety-nine, the first section of said chapter thirty-two still remains in force and such must have been the intention of the Legislature in the enactment of said chapter ninety-nine. The evident intention of the Legislature in enacting said chapter ninety-nine, was to make the laws of the State more stringent and effective against the sale of intoxicating liquors. It certainly could not have been the intent and purpose of the Legislature that there should be no law forbidding the sale of spirituous liquors, &c., by wholesale, without a license, or that there should be no law forbidding the sale of such liquors, &c., by retail, without a license, not to be drank in, upon, or about, the building or premises where sold, or in any adjoining room, building or premises, or other place of public resort connected with said building. If such was the purpose of the Legislature, then its purpose was widely opposite to and against the known policy of the legislation of the State, and the State of Virginia for many years past. The policy of the legislation of this State has been to suppress drunkenness, and thereby improve private and public morals and welfare, by forbidding by law, the sale of spirituous liquors, &c., by retail, especially without a license, by persons who give bond with good security as prescribed by law. If it were held otherwise than as I have before indicated, then the Legislature, by the passage of said chapter ninety-nine, intended to sweep away most of the valuable barriers against public drunkenness heretofore erected by legislation. I do not feel at liberty to give such effect to said chapter ninety-nine, by construction, as must fix upon the Legislature so unenviable a purpose or intention. I am free to confess that under the authorities which I have herein cited, and under a technical construction or interpretation thereof, the conclusion which I have announced was arrived at not without some difficulty. Still, I feel clear, under all the circum-

stances, that the conclusion is correct. A different conclusion would announce a deplorable and inexcusable deficiency in the law, "against the evils resulting from the sale of intoxicating liquors in the State of West Virginia."

The eleventh section of chapter one hundred and fifty-eight of the code of 1868, provides that "judgment in any criminal case, after a verdict, shall not be arrested or reversed, upon any exception to the indictment or other accusation, if the offense be charged therein with sufficient certainty for judgment to be given thereon, according to the very right of the case." This section of the code of 1868 is taken from the code of Virginia of 1860, twelfth section, chapter two hundred and seven, and it will be found substantially in section forty-four of chapter one hundred and sixty-nine of the code of 1819 of Virginia. In *Israel's Case*, 4 Leigh, 675 the court says: "Now here it is not averred that the defendant knew that the property had been distrained by the sheriff, and left by him with Flowers. For aught that appears, he might have been wholly ignorant of it. And the court thinks that the omission is not cured by the statute of jeofails. For the indictment might have been found true without any proof of such knowledge in the defendant as was a necessary ingredient to constitute a misdemeanor, and as it is not necessary to prove what is not averred, we are not to presume that such proof was adduced at the trial." See also 2 Va. Cases 1; 2 Va., Cases 2; 2 Leigh, 709; 2 Gratt, 629; 11 Gratt, 802; 18 *Id.*, 989; 4 Leigh 692.

In the case of *Commonwealth v. Pease*, 4 Leigh 692, 2 Gratt. 629, an indictment under the statute, 1 Rev. Code, ch. 111 sec. 30 for feloniously and fraudulently taking and removing a slave from one county to another, with intent to defraud the owner and deprive him of his property was held fatally defective, after verdict, for want of an averment that the slave was so taken and removed *without the consent of the owner.* "The absence of the

slave owner's consent," say the court in that case, "is expressly required in the statutory description, and is a constituent of the offense. That constituent is equally essential as the other terms with which it is connected, to complete the description of the felony." In the the case of *Com. v. Hampton*, 3 Gratt. 590, it is laid down, "that as a general rule, indictments founded upon a statute must state all the circumstances which constitute the definition of the offense." The indictment under consideration it is not pretended is founded upon the common law. It was evidently intended to be founded upon some statute. And from the face of it, it is impossible to determine whether it is founded upon the first section of the thirty-second chapter of the code, or the twelfth section of said chapter. The twenty-first section of chapter one hundred and fifty-eight of the code provides that "no exception shall be allowed for any defect or want of form in any presentment or indictment, founded on any provision of chapter thirty-two or one hundred and fifty-one, but the court shall give judgment thereon according to the very right of the case." And notwithstanding the provisions of this section, it was held, on demurrer to an indictment founded on the twelfth section of chapter thirty-two, it is not error to sustain a demurrer to an indictment for violating the conditions of the bond prescribed by said section twelve, when the indictment does not allege that the violation occurred at the place the liquors were to be sold under the license. *State v. Church*, 4 W. Va. 745. Judge Maxwell in delivering the opinion of the court in that case, says: "If every thing alleged in the indictment, if formally charged, could be true, and yet the defendant be not guilty of a violation of the section under which he is indicted, the indictment is not sufficient. The indictment avers that the defendant was duly licensed to sell spirituous liquors, wines, porter, ale, beer, and drinks of like nature, but fails

93

1875.
January Term.

State
v.
Cain.

to aver in what county or in what place he was licensed to sell. The fifteenth section of chapter thirty-two, provides that every certificate to sell spirituous liquors shall specify the house where they are to be sold, and a sale at any other place shall be held to be a sale without license. The indictment avers that the defendant, on a certain day named, in the said county, at his saloon did unlawfully permit one Shipe, to drink to intoxication. Now unless the saloon named is the place where the liquors were to be sold under the license, there can be no violation of the bond of the defendant, by selling at the said saloon, although he would be guilty of selling without a license, and could be prosecuted under the first section of said chapter. *Commonwealth v. Young,* 15 Gratt. 664. The indictment is, therefore, both in form and substance fatally defective, and the judgment sustaining the demurrer to it will have to be affirmed."

The fourteenth section of the bill of rights in the present constitution of this State, in speaking of the trial of crimes and misdemeanors, provides that "in all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted," &c. The indictment in this cause cannot be founded upon the first section of chapter ninety-nine of the acts of 1872, for it does not use the words "intoxicating liquors," or allege that the liquor was sold to be drank at the place where sold, &c. And yet it could as well be sustained under that section, after verdict, as under the first section of chapter thirty-two, or the twelfth section of said chapter, if it be operative and not repealed by the first and third sections of chapter ninety-nine, as to the sales made on Sunday. The sales prohibited by the first section of chapter thirty-two, and the first section of said chapter ninety-nine, without a license, are prohibited as much on Sunday as any other day of the week. But by the twelfth section of chapter thirty-two, sales on Sunday are prohibited by persons who are licensed and required to give the bond

by that section. All that is charged in the indictment in this cause might be true, and still the defendant might not be guilty of a violation of the said twelfth section, even though that section is altogether operative and in force. And the same may be said as to the first section of chapter thirty-two, and also as to the first section of said chapter ninety-nine.

If there is a tribunal authorized to take the bond specified in said twelfth section, I do not see why the bond therein specified might not properly be taken, or that the provisions of the first section of said chapter ninety-nine as to the taking of a bond of a wholly different character should necessarily be construed to repeal the provisions of the said twelfth section; as to a bond, for "when the forms or directions under the several acts are such as may well subsist together, an implication of repeal cannot be allowed." There may be two bonds as well as one, especially where the prescribed conditions are wholly different, and for entirely different purposes, as in the case of the bonds specified by said twelfth section and first section of chapter ninety-nine. Every legislative act in affirmative words is to be regarded *prima facie* as an *addition* to the *mass* of law; for such on its face it purports to be; yet when it is inconsistent with the former law, it must, as the last expression of the legislative will, prevail. But repeals by implication thus explained are not favored, and a legislative intent to repeal an existing statute is never presumed. If two acts seeming to be repugnant, can be reconciled by any fair construction, they must be, when no repeal will be held to take place. Bishop on Stat. Crimes, sections 154, 155. The same author also says, in section 166: "A statute which provides a new punishment for an old offense operates as a repeal of so much only of the old law as relates to the punishment." However, I do not now determine, whether the said twelfth section of chapter thirty-two is repealed by implication by the provisions of said chapter ninety-nine, as it is not material or nec-

essary to do so in this case. Nor do I determine how far said twelfth section has become inoperative, or whether the county court has or has not the authority, under the constitution and existing laws, to grant license to sell intoxicating liquors, because the question does not fairly arise in this case.

For the foregoing reasons, the judgment of the circuit court of the said county of Wood, rendered in this cause on the 3d day of July, 1874, against the defendant, must be reversed and annulled. And this Court, proceeding to render such judgment in the cause as the said circuit court should have rendered upon the motion made in the cause, after verdict, in arrest of judgment upon the verdict of the jury, it is considered that judgment be arrested, that the said verdict of the jury be set aside and the indictment in the cause be quashed.

The other judges concurred.

JUDGMENT ARRESTED, VERDICT SET ASIDE AND INDICTMENT QUASHED.