Wanamaker, J.,
concurring. The primary and paramount question in this case bared to the bone is this: Can the secretary of state, under the constitution of Ohio, nullify or deny to the people their right of referendum on a proposed law, statutory or constitutional, upon the sole ground that the proposed law, if it shall receive a majority vote of the people and thus be adopted as a law, will be in conflict with some provision of the federal constitution?
The majority of this court emphatically answer this question with a no. The minority with a yes.
*573 I fully agree with the doctrine declared in the per curiam opinion of the majority.
The minority view, as presented by Chief Justice Marshall, suggests a further consideration of reasons for the judgment herein entered. In his bill of complaint against the judgment in this case the chief justice urges the following:
“My protest in this case will be against the application of the authority of former adjudications, because the facts and conditions are essentially different. The three cases referred to are Pfeifer v. Graves, Secy. of State, 88 Ohio St., 473; Weinland v. Fulton, Secy, of State, 99 Ohio St., 10, and City of Cincinnati v. Hillenbrand, 103 Ohio St., 286.”
The burden being on the minority to demonstrate that the majority are wrong, we now have the issue squarely made. Are “the facts and conditions” of above three cases “essentially different” from the case at bar?
The dissenting opinion frankly admits that the Pfeifer case, supra, was rightly decided. It holds that the Weinland and Hillenbrand cases were merely decided upon the authority of the Pfeifer case. In substance, this may be conceded, with the modification that the Weinland case is an extension of the principle from a statute of the state, involved in the Pfeifer case, to a provision of the state constitution; that is, it applies the same doctrine to all state laws, whether those laws be statutory or constitutional.
The chief justice further says: “We should therefore look primarily to the Pfeifer case to ascertain what was decided, and the reasons therefor.”
*574 I cheerfully accept this issue. In the Pfeifer case, on page 475, the following appears: “The petition alleges that the proposed law * * * if adopted by the electors of the state * * * wofuld be in conflict with the Fourteenth Amendment of the Constitution of the United States, and with Sections 1, 2, 14 and 19* of the Bill of Bights and Section 2'6, Article II of the Constitution of Ohio; that the submission of the proposed law at the election to be held November 4, 1913, will involve the useless expenditure of public moneys of the state, and that the plaintiffs are without adequate remedy at law and will be irreparably injured unless the court gives them relief.”
The conclusion of the court relating to this case is in the last paragraph of the syllabus: “5. This court has no authority to pronounce an opinion, a judgment or a decree upon a mere moot question as to whether a proposed law will conflict with the constitution, if it shall be enacted by the general assembly, or be adopted by the people.”
Now as to the “reasons therefor,” mentioned in the dissent, I submit not merely three limes, as is done in the dissenting opinion, but all that Judge Wilkin says upon that question. Prom page 487 the following is submitted:
“There is another indisputable and imperative reason why the remedy they invoke must be denied. Wc can not intervene in the process of legislation and enjoin the proceedings of the legislative department of the state. That department is free to act upon its own judgment of its constitutional powers. We have not even advisory jurisdiction to render opinions upon mooted questions about constitutional *575 limitations of the legislative function, and we will not presume to control the exercise of that function of government by the general assembly, much less by the people, in whom all the power abides. The legislature, having delegated authority, prescribed and limited by the constitution, may exceed its authority by promulgating a law in conflict with the constitution. In a clear case of the latter sort, where the void law is about to be enforced against a citizen to his prejudice, we may enjoin execution of the law, for the protection of the rights of person or property guaranteed, by the constitution. This is not such a case; no private rights of person or property are in jeopardy, and there is no law or semblance thereof complained of. We are simply asked to regulate the affairs.of another branch of government, in deference to the general welfare, in a matter quite outside and independent of our authority. We are asked to prevent the people from exercising the initiative, upon a quizzical interpretation of a single word in their own letter of authority to their secretary of state. We can not enjoin the sovereign state of Ohio where the people have not in their constitution, clearly beyond reasonable doubt, limited the exercise of their power to legislate directly by the initiative.”
Note the several pertinent propositions of law used in the Pfeifer case:
(1) “That department [the legislative] is free to act upon its own judgment of its constitutional powers.”
(2) “We will not presume to control the exercise of that function of government by the general assembly, much less by the people, in whom all the power abides. ”
*576 (3) “In a clear case * * * where the void law is about to be enforced against a citizen to his prejudice, we may enjoin execution of the law, for the protection of the rights of person or property guaranteed by the constitution. This is not such a ease; no private rights of person or property are in jeopardy, and there is no law or semblance thereof complained of. * * * We are asked to prevent the people from exercising the initiative, upon a quizzical interpretation of a single word in their own letter of authority to their secretary of state. We can not enjoin the sovereign state of Ohio,” etc.
I contend that this plain phrase says just what it means, means- just what it says.
Simply stated, it is the democratic doctrine of non-interference with a purely legislative power or function by either the executive or judicial departments of the government, while the legislative department is considering and determining the proposed law.
The above reasons, therefore, from Judge Wilkin’s opinion, probably afford sufficient reason for not quoting it further in a dissenting opinion.
This doctrine of non-interference with the legislative department in the governmental business of lawmaking, as declared in the Pfeifer case, supra, was reaffirmed in Weinland v. Fulton, Secretary of State, 99 Ohio St., 10. The court was so clear and unanimous upon that doctrine that the opinion took the form of a per curiam, which is here fully quoted:
“By the Court. In an action to enjoin the Secretary of State from submitting for the approval or rejection of the electors a constitutional amendment proposed by petition in pursuance of the provisions *577 of Section 1 and Section la of Article II of the Constitution of Ohio, a court can not consider or determine whether such proposed amendment is in conflict with the Constitution of the United States. (Pfeifer et al v. Graves, Secretary of State, 88 Ohio St., 473, approved and followed.) Judgment affirmed. Nichols, C. J., 'Wanamaker, Newman, Jones, Matthias, Johnson and Donahue, JJ., concur. ’ ’
This same doctrine is approved in Cincinnati v. Hillenbrand et al., Board of Deputy State Supervisors, 103 Ohio St., 286, in which all the judges, including the two minority judges in the case at bar, concur.
When the court held in the Pfeifer case that it had no authority to pronounce “a judgment * * * as to whether a proposed law will conflict with the constitution, if it * * * be adopted by the people,” when the court declared in the Weinland case, supra, that a court can not “consider or determine” whether such proposed amendment is in conflict with the Constitution of the United States, it surely did not do the vain thing of making these declarations of law where there is no issue or challenge or complaint of unconstitutionality.
The court simply said, regardless of whether the challenge of unconstitutionality had merit in it or not, no matter how clear it might be, this court had then no power, no jurisdiction to “consider or determine” that question; and it is only trifling with technicality to hold that an assumed clearness of conflict claimed by the minority would in and of itself give the court jurisdiction in three cases in *578 which the court expressly said that it had no jurisdiction to “consider or determine” that question. The minority opinion further says:
“The controversy in that case [the Pfeifer case] involved legal questions arising solely under the Ohio Constitution, where the interests of the federal government and other states were not even remotely involved. There was no serious question of transgression of the Federal Constitution.”
As an answer to this, I have already quoted from the statement of fact in the Pfeifer case, at page 475, where one of the contentions made is: “It would be in conflict -with the Fourteenth Amendment of the Constitution of the United States, and with Sections 1, 2, 14 and 19 of the Bill of Bights and Section 26, Article II of the Constitution of Ohio.”
That should answer that contention.
In discussing the Weinland case, the minority opinion says:
“We have, however, taken the trouble to learn the facts of that controversy, and find that that case did involve a proposal which raised a question of its conflict with the Federal Constitution, and that question was a live issue in the case. In the light of the decision of Hawke v. Smith, Secy, of State, 100 Ohio St., 385, it is absolutely certain that the members of the court in disposing of the Wemland case believed that the proposal was not in fact in conflict with the Federal Constitution.”
I was a member of that court concurring in that judgment, and I have personal as well as official, knowledge that no such assumption was made by the members of that court. More than that, the record absolutely contradicts the assumption by saying *579 that “a court can not consider or determine” the question of conflict. How then can it he assumed that there was no conflict?
The entire minority opinion is founded upon the assumption that the supreme court of Ohio in the Pfeifer case considered and determined what it says it had “no authority” to hear and determine, and that the supreme court of Ohio in the Weinland case did “consider and determine” what it expressly said it had no power to consider and determine, which, as I understand court decisions, is a direct impeachment of the good faith of the court.
Hawke v. Smith, Secretary of State, 100 Ohio St., . 885, has no application, and throws no light on this controversy, because it involved a conflict between an existing state constitutional provision and an existing federal constitutional provision. Two things must be in existence before a conflict is possible.
The court in those three cases decided exactly what it declared, nothing more, nothing less, and it is impossible to candidly and fairly misconceive those declarations.
If there be that clear conflict between the state constitution and the federal constitution, as claimed by the minority, may we not abundantly confide in the judgment and patriotism of the majority of the people to likewise see that clear conflict, and vote accordingly? I commend the following sentiment of Abraham Lincoln in one of his great addresses: “Why should there not be a patient confidence in the ultimate justice of the people? Is there any better or equal hope in the world?”
*580 Suffice it to say, however, that the people themselves have reserved to themselves the right to pass upon this question by a referendum vote. If re-' jeeted by that vote, that is an end of the whole matter. If adopted by that vote, and anybody’s rights under the federal constitution are so affected as to present a judicial question, the matter of conflict will them be fairly and fully determined by the courts.
The doctrine of judicial supremacy, that is the right of the judicial department of government to have the last word on the validity of a law, or the validity of a state constitutional provision, is peculiarly an American doctrine. A great majority of our people have approved, and a still larger majority have acquiesced in it; but it is a fact well-known to our body politic that if the doctrine of judicial supremacy shall now be extended, as contended for by the minority, and a complete guardianship by the judiciary over the steps and processes of lawmaking be established, it will result not merely in a breaking down of the integrity and independence of the several branches of the government, but also in an undermining of the present field occupied by the courts in safeguarding our constitutions.
This very question of enlarging the jurisdiction of the supreme court of Ohio over proposed laws and proposed constitutional amendments was before the constitutional convention of 1912, and, after due deliberation by that convention, was voted down.
What the people’s representatives in the constitutional convention clearly denied to this court, this court is now urged to assert and usurp as a rightful part of its jurisdiction, and to declare proposed laws *581 and proposed constitutional amendments invalid because of alleged conflict between them and the respective constitutions. It would be a hazardous venture.
The declared duty of the secretary of state relative to the submission of this amendment has been so frequently passed on that it would seem unnecessary to cite any authority in support of the proposition. In the case of State, ex rel. Greenlund, v. Fulton, Secretary of State, 99 Ohio St., 168, the third paragraph of the syllabus, so far as pertinent, reads: “The provisions of Section la et seq., Article II of the Constitution, for the filing of petitions for proposed amendments to the constitution, for copies, arguments and explanations thereof, and for preparation of ballots so as to permit an affirmative or negative vote upon each law, section of law or proposed law, or proposed amendment to the constitution, are mandatory
This same doctrine is announced by the supreme court of Michigan in Hamilton v. Vaughan, Secretary of State, 179 N. W. Rep., 553 (212 Mich., 31), in paragraph 4 of the syllabus:
“The Supreme Court has no discretion when called upon to compel a public officer to perform a duty imposed upon him by law.”
This Michigan case will be referred to later, bearing upon another question.
The policy of stopping the enactment of a proposed law upon the ground of conflict with the constitution never occurred to the versatility and resourcefulness of our profession, so long as the general assembly had the sole power of lawmaking. It was too absurd a proposition to urge *582 in any respectable court; but after the people became the third house, and declared and safeguarded in the constitution their right of referendum upon those laws, the ingenuity of counsel suggested that in some way or other an injunction should issue to prevent the sovereign people from exercising their sovereign right in the constitution to adopt or reject a proposed law, upon the ground that such law, when adopted, would be in conflict with the constitution, state or federal. That is, nobody ever thought of enjoining the servants. That was preposterous, but it is now perfectly legal to enjoin their masters, the sovereign people. Ere long, if the minority policy is to prevail, we will have the various ministerial officers of the general assembly refusing to do their plain ministerial duty in connection with the business of lawmaking, upon the ground that they individually and officially believe that the proposed law is in conflict with the state or federal constitution, and the business of lawmaking will thereby be suspended until a mandamus can issue.
How the Other States Have Answered This Question.
It would seem that these three decisions in Ohio, all unanimous, were convincing, and conclusive upon the Ohio supreme court; that if any principle of law is obligatory upon this court that of non-interference by one department of the government with another until its work is finished, supported by these three decisions upon that doctrine, should have the force and authority of stare decisis at its best. If precedent and principle have any value in the deei *583 sion of cases, it would seem they should have double value here.
The only case apparently in point to sustain the minority view is from Nevada, State v. White, 136 Pac. Rep., 110 (36 Nev., 334). The syllabus pertinent reads as follows:
“A writ of mandamus will not issue to compel members of a city council to submit to the electors a proposed ordinance which would be void even if approved by a majority of the electors. ’ ’
I have examined the Nevada case with some care. The opinion clearly shows an entire absence of discussion of the question involved here, that is, the question of non-interference by the courts or the executives with the legislative agencies in the performance of their constitutional duty. It is of interest to observe in that case that the three judges constituting that court, in their rather loose opinion, use this language:
“As it is unnecessary to consider the constitutional question raised, the same will not be determined. ’ ’
I admit my inability to thoroughly understand just what the court did say as a whole in that case; but suffice it that no authorities are submitted upon the question involved here, and no course of reasoning advanced to justify the contention made here for the Nevada case. At most, the Nevada case is only a “thus saith the court” for Nevada.
However that one case may settle the law for Nevada, it has no binding force in Ohio, especially when the great preponderance of reason and authority is the other way.
*584 A much more recent case is from Michigan, relating not to an ordinance, nor a statute, but to a state constitutional proposal that is identical in principle with the case at bar, Hamilton v. Vaughan, Secretary of State, decided October 1, 1920, reported 179 N. W. Rep., 553 (212 Mich., 31). The first, fourth and fifth propositions of the syllabus read:
“1. Where, pursuant to Const, art. 17, § 2, relating to initiatory petitions for submission to electors of proposed constitutional amendments, a petition in proper form has been filed in his office, the secretary of state cannot refuse to submit the proposed amendment to the electors on the ground that such amendment would violate the federal Constitution; he being merely a ministerial officer.”
“4. The supreme court has no discretion when called upon to compel a public officer to perform a duty imposed upon him by law.
“5. When a proceeding is brought to compel the sécretary of state to submit to the electors a proposed amendment to the Constitution in accordance with a petition filed under Const, art. 17, § 2, the court cannot pass on the constitutionality of the amendment, the secretary of state refusing to submit the proposed amendment only on the ground that it would violate the federal Constitution.”
If two cases can be on all fours, can parallel each other, then the Michigan case and the Ohio case at bar are identical. In this case it is said:
“The views herein expressed find support in the following cases: State, ex rel. Bullard, v. Osborne, 16 Ariz. 247 (143 Pac. 117); Pfeifer v. Graves, 88 Ohio St. 473 (104 N. E. 529); State, ex rel. Griffiths, v. Superior Court, 92 Wash. 44 (159 Pac. 101, 162 *585 Pac. 360); Capito v. Topping, 65 W. Va. 587 (64 S. E. 845, 22 L. R. A. [N. S.] 1089); Treadgill v. Cross, 26 Okla. 403 (109 Pac. 558, 138 Am. St. Rep. 964). In the last of these it is said:
“ ‘The people of the State in the exercise of their legislative power to amend the Constitution have not yet expressed their opinion of the proposed amendment. They will do that at the election to be held thereon. If in the exercise of their legislative discretion they conclude that the proposed amendment violates any valid compact with the Federal government or any provision of the Federal constitution, they will no doubt in the observance of the duties of good citizenship, for that reason alone, reject the measure. If, on the other hand, they determine it to be a valid measure and adopt it, then, and not until then, will the judicial and the executive departments have the power and duty devolving upon them to determine its validity and enforce its provisions.’ ”
Dealing directly with the authority of the secretary of state in the premises the court, at page 38, makes this observation:
“The duty of the secretary of Státe is plainly prescribed. He ‘shall submit all proposed amendments * * * initiated by the people for adoption or rejection in compliance herewith.’ Upon the filing of the petition, the duty devolves on him to ascertain whether it complies with the constitutional requirements. He must canvass the same and determine whether it has been signed by the requisite number of qualified voters and also whether it is in the form prescribed and is properly verified. There is no provision that he shall determine whether the amendment contravenes any provision of the Fed *586 eral Constitution, nor is he required or directed to submit such question to the attorney general for decision. The duty imposed is purely a ministerial one and his performance of it is made mandatory by the express language of the provision, * *
I can imagine no more startling proposition to the sovereign people of Ohio, who in making our new constitution in 1912 endeavored by amendments to generally enlarge their reserve powers and correspondingly limit the powers of their public servants, to discover ten years after, as contended in the minority opinion, that, instead of having the right to alter and amend their own constitution at will, that public will was at all times subject to the approval and consent of their own secretary of state.
It is a novel doctrine, to say the least, that a public servant is greater than his master. Nineteen centuries ago it was written: “Is the servant greater than his Lord?” The old doctrine that enumeration of certain duties excludes all others not enumerated is peculiarly applicable in this case. The constitution itself specifies the duties that the secretary of state shall perform touching a proposed amendment, but nowhere is it suggested that he may pass on the question of whether a proposed amendment to the state constitution is or is not in conflict with any provision of the federal constitution.
It may be said that this is an implied power in every officer. Let us test it by this rule. The language of the constitution is that upon finding that the petition is regular he “shall submit” it to a popular vote at the next regular election. When was it ever claimed that a power could be implied so as to defeat a power that was expressed; that an implied power could be raised so as to defeat an ex *587 press duty? The simple statement furnishes a self-evident answer.
The result of this doctrine, if adopted, would create an autocracy in Ohio on all matters pertaining to the people’s sovereign right of referendum, at the head of which would he the secretary of state.
The cases already cited would seem to he sufficient to establish the soundness of the fundamental doctrine controlling the majority in this case, to-wit, that the judicial branch of the government in the exercise of its constitutional functions may not interfere with the legislative branch of the government in the exercise of its constitutional functions, much less may the executive branch of the government interfere with the legislative branch in such functions, save under a constitutional veto by the governor or the president.
A case from South Dakota, decided in 1896, is much in point, and could be read as a whole with profit, State, ex rel. Crammer, v. Thor son, 9 S. D., 149. Practically the whole syllabus is in point. Being lengthy, we will not quote it. There is, however, in the opinion, at page 153, a course of self-evident reasoning, which should be here reproduced:
“If the legislature has proceeded properly, and its proposed amendment shall be ratified by the people, the relator will have no legal cause of complaint, because, as a good citizen of the state, he will be bound to cheerfully accept the lawfully expressed will of a majority of its sovereign electors. If, on the other hand, the action of the legislature was such as to render any answer to the question inoperative, the constitution will not be modified, and no one will be affected. * * *
*588 ‘ ‘ There is another view, which involves the structure of the state government and the relation of its several departments. Should it be conceded that the relator has such an interest in the matter as entitles him to be heard, or that the action involves a question of such public concern as would warrant an attempt by the attorney general to obtain an injunction, could this court issue it? No precedent for such an action has been presented by counsel or discovered by the court. In discussing this phase of the case it will be assumed an amendment of the constitution was intended requiring the concurrent action of the legislature and electors. The former has acted. Its action will be communicated to the latter by means of defendant’s certificate. Until the latter shall have expressed their approval, the proceeding is incomplete, and the constitution will remain unchanged. The proposed amendment is on its way to the electors. Can this court, at this time,. impede its progress? Can it be called upon to anticipate conditions which may never exist? * * * This court has power to determine what such legislation is, what the constitution contains, but not what it should contain. It has power to determine what statutory laws exist, and whether or not they conflict with the constitution; but it cannot say what laws shall or shall not be enacted. It has the power, and it is its duty, whenever the question arises in the usual course of litigation, wherein the substantial rights of any actual litigant are involved, to decide whether any statute has been legally enacted, or whether any change in the constitution has been legally effected, but it will hardly be contended that if can interpose in any case to restrain the enactment of an unconstitutional law. Mississippi v. Johnson, 4 Wall. 500.”
*589 But this question involves not only the submission of an amendment asked for by a minority of ten per cent, of the voters of Ohio, but it likewise equally involves any amendment to be submitted by the secretary of state. Therefore the question here relates directly to amendments adopted by a constitutional convention, to be placed on the ballot by the secretary of state, or amendments proposed by joint resolution of the general assembly, which shall be placed upon the ballot by the secretary of state, and thus submitted to a vote of the people. If the secretary of state may in one instance stop the sovereign people in the making of statutes, or the making of constitutions, he may do it in any and all cases, whether the constitutional amendment is proposed by a constitutional convention, joint resolution of the general assembly, or by ten percentum of the sovereign voters.
We have already shown by overwhelming preponderance of argument, as well as authority, as evidenced by the decisions of the courts, that the judicial department cannot interfere with the legislative department in the business of lawmaking. How then can it be claimed that the secretary of state has the right and power to interfere? By the constitution of Ohio it is expressly provided in the Bill of Rights, Section 2, Article I, that “All political power is inherent in the people * * * and they have the right to alter, reform, or abolish the same [government] whenever they may deem it necessary.”
It is now sought to amend this provision by adding “with the approval and consent of the secretary of state.” . ..
*590 Under the constitution the secretary of state is made an executive officer. The question of constitutionality, which the minority seek to raise and decide, certainly is of a judicial character, not executive. The secretary of state is not vested with any jurisdiction to determine judicial questions dealing with the constitutionality of any law. His duties are merely ministerial in this respect, not discretionary.
If words can be made mandatory, they certainly have been so made in the constitutional language found in Section la, Article II of the Constitution.
In a case decided by the supreme court of Kansas, Duggan v. City of Emporia, 84 Kans., 429, the court says in the syllabus:
“Moot questions. In a suit by an individual taxpayer of a city of the second class to enjoin the city from submitting to the qualified electors under the initiative and referendum statute a proposed ordinance * * * the court will not anticipate conditions which may never arise, and since the people may not by their votes adopt the ordinance the court will not inquire into the validity of the proposed transaction.”
The opinion cites at considerable length Illinois cases dealing with the doctrine of enjoining popular elections through the referendum. The Illinois court in Walton v. Develing, 61 Ill., 201, uses this language at page 205:
“But the attempt to check the free expression of opinion — to forbid the peaceable assemblage of the people — to obstruct the freedom of elections — if successful, would result in the overthrow of all liberty regulated by law. The mere effort to assume such power is dangerous to the rights of the citizen. If the courts can dictate to the officers of the peo *591 pie that they shall not hold an election from fear of some imaginary wrong, then people and officers are entirely subservient to the courts, and the consequences are too fearful to contemplate.”
Many other authorities are cited to the same effect.
I concede the soundness of the various cases cited in the minority opinion upon the question of the federal law and constitution being paramount to any state law or constitution. I, however, deny their application in this case, because as yet we have no state law or state constitution with which such federal constitution or laws can be in conflict. It is at most an abstract or moot question that may never arise. When that question of conflict does properly arise, the cases so cited may be pertinent.
I agree with the dissenting opinion’s historic view concerning South Carolina’s attempted secession, Ihe Kentucky Resolutions and Virginia Resolutions; I might also add, the Hartford Convention. But I candidly confess my inability to see their relevancy to the case at bar.
After having admitted in the early part of the dissenting opinion that “we are not concerned with the question as to whether as a matter of policy the officials of the state of Ohio shall take a part in the enforcement of the provisions of the Eighteenth Federal Amendment ,” I regret that at the close of the dissenting opinion there has been injected into the case the question of law enforcement. When this question properly arises, I make bold to say that there will be no division, no backward step taken by the majority upon that policy, but the question is not now here.
*592 Summarizing, I hold, therefore:
1. That in the question at bar, this court has held unanimously, three times, the minority in this case concurring with the majority, that, the judicial branch of the government cannot interfere with the legislative branch of the government in its constitutional functions.
2. Neither by the same reasoning can an executive branch of the government interfere with the legislative branch. Each must have a decent regard for the independence and integrity of the other while engaged in its own proper field and business.
3. A conflict of law presupposes two existing laws, else the question of conflict cannot arise. The state provision as yet has no existence; it is only a proposal; it may never have an existence. The presumption is that if it is in clear conflict with the federal constitution, the people of Ohio will vote accordingly.
4. Constitutional questions, from the days of John Marshall, must be raised in a proper suit at law or equity, where it appears that one’s constitutional rights are then being invaded by a present law in present operation, in clear constitutional conflict, to one’s injury, and that injury must be substantial, and not fanciful, fictitious or nominal.
5. Where a constitution expressly provides an act to be done, a constitutional proposal to be submitted to the electors by the secretary of state, in the words “he shall submit” it, that language is not only mandatory upon the secretary of state, but equally mandatory upon this court.
6. Finally, forgetting, the terms wet and dry in the proposed prohibition amendment, let us consider a proposed amendment against profiteering, which, *593 if I mistake not, will before long go into the Ohio constitution. Suppose such a constitutionally-proposed amendment against profiteering is certified to the secretary of state, either by a constitutional convention, a joint action of the general assembly, or ten per cent, of the voters of Ohio, and the secretary of state refuses to put the proposed amendment on the ballot, upon the ground of conflict with the Fourteenth Amendment to the Federal Constitution. If this would not be a denial of the sovereign right of the people in our fundamental democracy I do not know what would.