JOHN L. DICKINSON *v.* ERNEST K. JAMES, *State Tax Commissioner.*

(CC 592)

Submitted May 18, 1938.   Decided June 7, 1938.

*Brown, Jackson & Knight* and *C. W. Moxley,* for plaintiff.

*Clarence W. Meadows,* Attorney General, for defendant.

FOX, JUDGE:

The petition in this proceeding is filed under the provisions of Section 54, Chapter 89, Acts of the Legisla-

ture, 1935, Code, 11-13B-54. The petitioner contends that the defendant Tax Commissioner, acting under the "Personal Income Tax Act", Chapter 89 of the Acts of the Legislature of 1935, as amended by Chapter 111, Acts 1937, and especially through the application of section 30 thereof, required of him the payment of taxes to the extent of $250.77 in excess of the amount properly chargeable against him in the calendar year 1937, for which he made his return. He paid said sum under protest, and then, under section 53 of article 13B, applied to the Tax Commissioner for the refund of said amount and was refused. He then filed his petition in the Circuit Court of Kanawha County against the Tax Commissioner, asking that the correct amount of his tax liability be ascertained and that any excess paid by him beyond that properly chargeable be refunded. The demurrer of the Tax Commissioner to the petition was overruled, and upon the joint application of the parties, the trial court certifies the questions involved to this Court.

The claim of the petitioner is based upon two separate transactions which may be briefly stated: (1) In the year 1930, he purchased 200 shares of the stock of a corporation at the price of $7,350.00; on January 1, 1935, the fair market value of this stock was $400.00; in the year 1937, he sold said stock for the sum of $5,301.71, thus showing a profit of $4,901.71 over the value of the stock on January 1, 1935, but suffering an actual loss in the transaction of $2,048.29. As to this transaction, he was required to pay taxes on $4,901.71. (2) In the year 1934, he purchased 100 shares of the stock of another corporation at the price of $5,867.50; on January 1, 1935, the fair market value of this stock was $4,500.00; it was sold in 1937 for $8,620.82, thus showing a profit over its 1935 value of $4,120.82, while the actual profit realized from the transaction was $2,753.32. He was required to pay taxes on $4,120.82, instead of his actual gain. The two amounts on which the tax rate of four per cent was imposed unlawfully, as contended by peti-

tioner, were $4,901.71 in the first transaction and $1,-367.50 in the second, an aggregate of $6,269.21.

The provision of the constitution under which the income tax was imposed grants to the legislature power "to tax privileges, franchises, and incomes of persons and corporations and to classify and graduate the tax on all incomes according to the amount thereof and to exempt from taxation, incomes below a minimum to be fixed from time to time * * * ." Constitution, Article X, section 1. The act imposing the tax defines gross income as "gains, profits, and income" derived from certain specified activities, including "the transaction of any business, carried on for gain or profit," and also including "gain, profit or income derived through estates or trusts * * * ." Code, 11-13B-21, 24. Net income is defined as gross income less certain permitted deductions set out in section 25 of the act. It will be noted that the words "gain, profit or income", are used to describe what is intended to be taxed. It will be noted, also, that the tax is controlled by the provision in the section of the constitution cited that "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State * * * ." The exceptions are those with respect to classification of property, certain exemptions, and the power to classify and graduate the tax on all incomes according to the amount thereof. They are limited to those specified in the constitution, and but for the exceptions so noted do not infringe upon Section 1, Article X of the Constitution before the so-called Tax Limitation Amendment, adopted in 1932. It is assumed, therefore, that the legislature, in enacting the income tax statute had in mind to conform to the constitutional provision with respect to the equality and uniformity in taxation, and it seems clear that once a tax is imposed, under whatever classification it falls, it must be applied with equality and uniformity to all persons and corporations subject thereto.

The personal net income tax statute was first enacted by the legislature at its regular session in 1935, and was

made to apply to incomes received during the calendar year of 1935. Chapter 89, Acts 1935. The dispute before us involves a construction of sub-section 1 of section 30 of that act, as the same was amended by Chapter 111 of the Acts of 1937. The pertinent part of section 30, as enacted in 1935, reads: "The basis for determining the gain or loss from the sale or other disposition of property, real or personal or mixed, shall be, in the case of property: 1. Acquired before January first, one thousand nine hundred thirty-five, the fair market price or value as of that date, if the price or value exceeds the original cost, and in all other cases the cost." And as amended by the Act of 1937, sub-section 1 reads: "Acquired before January first, one thousand nine hundred thirty-five, the fair market price as of that date; and if acquired after January first, one thousand nine hundred thirty-five, the actual cost." It will be observed that the words "or value" and "if the price or value exceeds the original cost", appearing in the 1935 act have been eliminated by the later enactment. The words last quoted made it clear that under the 1935 act, the January 1, 1935, date could only be used in cases where the value, as of that date, exceeded the original cost. Under that act, the taxpayer would not be held to the arbitrary date, because the value of the stock was not more but less than the original cost. By the elimination of these words, the restriction was removed, and giving the statute, as amended, a literal interpretation, the same was made to apply to all cases where property was purchased before January 1, 1935, regardless of whether the property was of greater or less value on that date, as compared with the date of its purchase, and the specified date fixed as the time from which profits or losses must be determined, even though the application thereof might in some cases, as in the case at bar, show an income where there was an actual loss, or show a greater income than that actually received. It may be contended that the legislature intentionally made the change in the statute to effect this result, and it is for us to determine whether

it was so intended, and if so, whether, under the constitution, it had the power to impose an income tax on anything other than actual profit or gain.

We see nothing in the constitution, or the statutes enacted thereunder, supporting the theory that it was ever intended to impose a tax on anything other than incomes actually received during the year for which a return is made. The constitution speaks of "incomes". By the statute, gross income is defined as "gains, profits and income", and the amount of taxable net income is determined by gross income less certain permitted deductions. We do not believe that the legislature had the power, under the constitution, to make anything other than actual gain, profit or income realized during the tax year the basis for the tax; nor that it intended to do so. This interpretation of the statute in question comports with every element of justice to the taxpayer because, while he should be required to make his fair contribution to government, he has done so when he pays a tax on his actual income, and any construction which requires him to do more results in injustice to him, and violates the principle of equality and uniformity in taxation, as well as the elementary rule of fair play. It is obvious that, if through the use of an arbitrary date for the ascertainment of profits, a taxpayer is made to pay on income he has not actually received, there is no equality or uniformity of payment when compared with the taxpayer who pays only on his actual income, and we are constrained to hold that the legislature did not intend such a result.

The fair meaning of section 30, as amended, is that it is to be applied only where there has been an actual profit or loss. The arbitrary date, January 1, 1935, is to be used to limit the taxable income to that accruing after that date and realized during the year for which the tax return is made; and to limit the deductible losses to that suffered after that date. Thus, we avoid making the act retroactive as to gains and losses. Any other rule would work injustice both to the state and the tax-

payer. For example, a taxpayer may have purchased property at a low figure in 1920 and the value may have largely increased as of January 1, 1935, and may have been sold at some additional profit in 1937; on the other hand, the same taxpayer may have purchased another property at a very high figure in 1925 and the value thereof greatly reduced by 1935, resulting in great loss as of that date, and still further loss when the property is sold in 1937. To require the taxpayer to pay a tax on profits accruing prior to January 1, 1935, would be to make the act retroactive, and work an injustice to the taxpayer; and to allow the taxpayer to deduct from his 1937 income losses suffered by him prior to 1935, would result in injustice to the state. Section 30 prevents injustice in either case, and that, in our judgment, was its sole purpose.

Our interpretation of our constitution and statutes finds support in the decisions of other courts, both state and federal. These cases pass upon statutes substantially the same as our own, although, of course, referring to different dates. In *Goodrich* v. *Edwards*, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758, interpreting the federal income tax law, which fixed the arbitrary date of March 1, 1913, as the date from which income should be calculated, it was held that "only where, and to the extent that, a gain over the original investment is realized upon a sale of property acquired before March 1, 1913, and worth less on that date than when acquired, can there be any taxable income arising out of such sale, assessable under the Income Tax Act * * * since this legislation plainly imposes the income tax on the proceeds of sales of personal property to the extent only that gains are derived therefrom by the vendor." This holding was followed in *Walsh* v. *Brewster*, 255 U. S. 536, 41 S. Ct. 392, 65 L. Ed. 762; *U. S.* v. *Flannery*, 268 U. S. 98, 45 S. Ct. 420, 69 L. Ed. 865; *Heiner* v. *Tindle*, 276 U. S. 582, 48 S. Ct. 326, 72 L. Ed. 714; *Nichols* v. *Smith*, 35 Fed. (2d) 938; *People* v. *Wendell*, 188 N. Y. S. 301. In *Brown* v. *Long*, 242 Mass. 242, 136 N. E.

188, it was held that "income * * * should be given a broad meaning, but must be rationally construed, and not stretched to include purely theoretical, as distinguished from practical, conceptions." And further, that " * * * where stocks on January 1, 1916, were worth less than their previous cost, only the difference between the cost and the selling price is taxable as income; section 7 providing that the value on January 1, 1916, shall be the basis of determination, only applying when the value on that date is in excess of the value of the original investment made before that date." In *Falk* v. *Rosa,* 201 Wis. 292, 230 N. W. 64, it was held that " 'income' as used in income tax provision of Constitution must be interpreted in accordance with ordinary, everyday meaning. For property to give rise to income as regards tax, its selling price must exceed its cost." In this case, there is a most illuminating discussion of the question, which we quote:

> "Income or gain arises only when the property is sold at a profit. As long as it is held by the owner, it simply represents the owner's capital invested in it, whatever its fluctuating value may be. An income within the meaning of the constitutional amendment can arise in no other way than by a sale of the property at an advance over the amount paid therefor. In order that a sale after January 1, 1911, of property purchased before that date give rise to an income, it must first appear that the property sold for more than it cost. Unless that appears no income results from the sale. Where that does appear, then, and not until then, does the queston arise as to what proportion of the income is subject to an income tax. When it does arise, the present statute affords a correct rule for determining that portion thereof which is subject to an income tax. That amount will be represented by the difference between the value of the property January 1, 1911, and the sale price. The amount of the appreciation in the value of the property after that time is subject to an income tax. The value of the property on Janu-

ary 1, 1911, is not material at all upon the queston of whether an income was realized from a sale of the property. It becomes material only when a gain or income is revealed by a comparison of the purchase price with the sale price. In such cases the statutory provision we are considering operates as a limitation upon either the gain or loss material to the purposes of the income tax."

The same rule, as applied to losses, was invoked in *Hudson* v. *Oklahoma Tax Commission*, 169 Okla. 630, 37 P. (2d) 918; *Brandon* v. *State Revenue Commission*, 54 Ga. App. 62, 186 S. E. 872.

We are of the opinion that the circuit court was correct in its action on the questions raised on the demurrer to the petition, and its ruling thereon is affirmed.

*Affirmed.*