# CHARLESTON.

CAPITO *v.* TOPPING.     SUTHERLAND *v.* TOPPING.     REESE *v.* TOPPING.

Submitted March 12, 1909.     Decided April 27, 1909.

1. MANDAMUS—*Purposes of Relief—Legislative Officers.*

    *Mandamus* is an appropriate remedy to compel the keeper of the legislative rolls to deliver, to a citizen, requiring it, a copy of an act passed by the legislature, and also to compel him to promulgate the same with the other acts passed, by printing and binding it with them for distribution and sale. (p. 589.)

2. SAME—*Public Officer—Defense.*

    Mere lack of possession, by a public officer, of a document, of which he is the legal custodian, constitutes no defense to an application for a peremptory writ of *mandamus*, to compel him to certify and deliver a copy thereof, when the law requires it of him. (p. 590.)

3. CONSTITUTIONAL LAW—*Who May Raise—Question.*

    Unconstitutionality of a legislative act cannot be set up by the keeper of the rolls, as a defense to a writ of *mandamus*, to compel him to furnish a copy thereof; this defense being avail-

able only for protection of personal interests or rights invaded or encroached upon by unconstitutional legislation. (p. 590.)

4. SAME—*Construction of Constitution—Mandatory.*

Being organic in character, constitutional provisions stand on a higher plane than statutes, and, as a rule, are mandatory, prescribing exact or ·exclusive times and methods of doing acts permitted or required. (p. 591.)

5. STATUTES—*Veto by Governor.*

The provision in section 14 of Article VIII of the Constitution of this State, requiring the Governor to file a bill, with the objections thereto, in the office of the Secretary of State, within five days after the adjournment of the legislature, in order to effect a veto thereof, is mandatory, in respect to both the time and the manner of exercising the power. (p. 591.)

6. SAME—*Veto—Time for—Exclusion of Sunday.*

In computing the period of five days after adjournment, allowed for the exercise of the power of executive disapproval, a Sunday, occurring within five days after adjournment, is to be excluded. (p. 592.)

7. EVIDENCE—*Parol Evidence.*

When the records of the legislature show the time of adjournment and are clear and unambiguous, respecting the same, they are conclusive; and extraneous evidence cannot be admitted to show a different date of adjournment. (p. 593.)

8. STATES—*Legislative Records—Certainty.*

The date of adjournment of the legislature, as shown by its journals, is not contradicted or rendered uncertain, by record evidence therein of the transaction of a large amount of business within a short period of time. (p. 594.)

9. STATUTES—*Reading—Amendments.*

Amendments to legislative bills, read on three separate days, as required by the constitution, made at a late stage of the proceedings, such as the third reading, do not make it necessary to repeat the constitutional readings thereof. (p. 595.)

Separate original applications for peremptory writs of *mandamus* by Charles Capito, Howard Sutherland, and Z. M. Reese to be directed to C. L. Topping, Clerk of the House of Delegates.

*Writs Awarded.*

PRICE, SMITH, SPILMAN & CLAY and KEMBLE WHITE, for petitioners.

WM. G. CONLEY, Attorney General, WM. M. O. DAWSON, and LINN & BYRNE, for respondent.

POFFENBARGER, JUDGE:

Chas. Capito applied to this Court for a peremptory writ of *mandamus,* to compel C. L. Topping, Clerk of the House of Delegates, to certify and deliver to him a copy of a certain document, known and designated in the legislative proceedings, as Senate Bill No. 162, a bill to amend and re-enact a certain statute, constituting the charter of the city of Charleston, as an act passed by the legislature. Howard Sutherland applied for two such writs, commanding said Topping to certify two other documents, relating to roads, as having become laws. Z. M. Reese also asked such a writ, commanding him to certify still another one, purporting to establish Grant Independent School District in Marion county, as a law passed. Another purpose of the applicants was to have these acts printed and bound with the other acts passed. Topping resisted all these applications, basing his defense on an alleged veto by the Governor in each case and unconstitutionality of some of the acts.

The facts, disclosed, are as follows: The Legislative journals, as written up by the clerks, but not yet signed by the presiding officers, show the legislature adjourned on the 26th day of February, 1909, but do not disclose the hour of adjournment. As shown by affidavits, tendered, that body, in point of fact, adjourned on February 27, 1909, at 6:40 o'clock, A. M. Within five days after February 26th, the Governor endorsed "Disapproved" on some of the bills, but did not return any of them to the office of the Secretary of State within that period, but did return them within five days after February 27th, excluding Sunday, to-wit, on the 5th day of March, 1909, at 8:00 o'clock, A. M., that being more than five days after midnight of February 26th, excluding Sunday, February 28th. The legislative journals show a recess for ten minutes at 11:30 o'clock, P. M., on February 26th and the transaction of a large amount of business after that time.

Assuming the validity of the acts in question, the right of the applicants to have copies thereof and the propriety of the remedy invoked are clear beyond doubt. As citizens and tax-payers, they have a sufficient interest, and the statute makes the Clerk

of the House the Keeper of the Rolls, and requires him to make and deliver a copy of any act to any person, requiring the same, on payment of the fee allowed therefor. Code, chapter 12,. sections 13 & 14. That *mandamus* is the proper remedy to enforce performance of this duty is obvious, in view of legal principles, and has been judicially declared. *Wise* v. *Bigger, Clerk,* 79 Va. 269; *Wolfe* v. *McCaull,* 76 Va. 876.

Unconstitutionality of the acts in question, treating them as having had bestowed upon them all the vital and essential requisites of passage, in due form by both houses of the legislature, and not having been vetoed, may be eliminated as a defense, the respondent cannot make in his ministerial and representative capacity, if it exists. That defense is open only to persons having a personal interest or right, which the unconstitutional act invades or violates. *Dillon* v. *County Court of Braxton County,* 60 W. Va. 339, (52 U. S. Law Ed. 450, 208 U. S. 192.)

Another objection, preliminary in character, is that the document is not in the custody of the respondent. If it became a legislative act, it should be in his possession, and, if it is not, he fails to show any excuse for not having it. His return stops with the mere statement that the Secretary of State, not he, has it. It fails to go further and show his inability to get it. It is not even suggested that he cannot obtain it, or that he has made any efforts to do so. As the legal custodian of such records, he is bound to exercise some degree of diligence in respect to them. An impossibility would not be required of him, of course, and, if it appeared here that time were necessary to enable him, by legal proceedings or otherwise, to obtain the possession of it, that might constitute a defense. Whether it would or not, we are not called upon to say, for it is not even suggested in the return. Insufficiency of this part of the return is obvious.

The constitutional provision involved and conferring and limiting the gubernatorial power of veto, reads as follows: "Any bill which shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, shall be a law, in like manner as if he had signed it, unless the Legislature shall, by their adjournment prevent its return, in which case it shall be filed with his objections, in the office of the Secretary of State, within five days after such adjournment, or become a law." Cons. Art. VII., sec. 14.

In view of the terms, as well as the nature of this clause, it must be held to be mandatory, not merely directory. Constitutional provisions are organic. They are adopted with the highest degree of solemnity. They are intended to remain unalterable except by the great body of the people, and are incapable of alteration without great trouble and expense. They are the frame work of the state as a civil institution, giving cast and color to all its legislation, jurisprudence, institutions and social and commercial life, by confining the legislature, the executive and judiciary within prescribed limits. All the great potential, dominating, creative, destroying and guiding forces of the state are brought within their control so far as they apply. Thus, to the extent of their duration, they define and limit the policy of the state more rigidly and unalterably than the sails and rudder of the ship, when set, govern and control its course. A more apt figure is made up of the great system of highways, including railroads, fixing the mode, courses and extent of travel and transportation. So they necessarily stand on a much higher plane than mere statutes, and the courts, as a rule, do not feel warranted in upholding deviations from them in respect to the manner and time of the performance of acts, prescribed or required by them. *Wolfe* v. *McCaull,* 76 Va. 876; Cooley Const. Lim. (7th Ed.) 114, 219; Lewis' Suth. Stat. Con., sec. 164, p. 109. Tested by its terms, the clause under consideration may be said to be in mandatory form, though form is not always conclusive. The passage of the act makes it law, subject to a contingency, the executive veto. If the Governor desires to veto a bill, after the adjournment of the legislature, it must be filed, with his objection, "in the office of the Secretary of State within five days after such adjournment, or become a law." It is alternative and emphatic, saying if a certain thing is not done, another shall happen. Unlike many other provisions, it does not stop with the prescription of the affirmative act, leaving the consequence of failure to inference. It declares the sequence. We are aware of no decision authorizing the view that a constitutional clause, dealing with matters so high and vital in character as the executive power of veto, and the making of laws, and having form and terms so emphatic, is merely directory.

In our opinion, this clause requires actual filing in the office of the Secretary of State within five days after adjournment.

Otherwise, something other than the record indicated in it would have to be relied upon as evidence of the non-existence of the law. Resort might be had to uncertain memoranda, or somebody's recollection or understanding. Laws should rest upon something more certain and durable, and the evidence of their existence should be a public record, kept in a certain place, that all may know where to look for it and be able to see it. The legislative journals show the passage of an act making it a law subject to a contingency. This is evidenced by a public record. The veto, annulling it, after adjournment, should also be evidenced by a record, and, in framing the constitution, the people saw fit to designate a certain office as the repository of that evidence. Plainly no other place will do. If any other could be substituted, what one would it be? One man might say the Governor's office, another the Auditor's office and so on, and there would be no certain place. The locality or name of the place of record is not of primary importance, but it is vital that there be a known, certain place. We think, therefore, the veto is not effective, unless the bill is filed with objections in the prescribed office. Nor have we any doubt that it must be filed within the prescribed time. If not within five days, then within how many? Who shall say? Is not a time limit, beyond which the citizen may know the fate of an act passed, important?

Two questions, relating to the computation of time, have been argued. One of these is whether a Sunday, occurring within five days from adjournment, is to be excluded. In our opinion, the settled rules of construction, reason and authority all point to an affirmative answer to this question. Sundays are excluded from the five days, allowed the Governor for action on bills passed, prior to adjournment. This defines the five-day period, subsequently used in the same section. The Governor is required to do certain work within five days, not to be engaged in a certain way or at a certain place for five days. As no intention to require work of him on Sunday can be presumed, and work for five days is marked out for him, it is reasonable to say five working days were contemplated. To this effect the authorities are almost, if not quite uniform. Many decisions, holding it proper to exclude from the count the first day, in computing time under a clause, saying the Governor shall act upon a bill

within five days after it shall have been presented to him, are relied upon ,but they are not applicable here. We are not considering a clause of that kind. We do exclude the day of adjournment, which corresponds to the day of presentation under the other clause, but there is no authority for the exclusion of the day after adjournment after having excluded the day of adjournment.

There being no dispute as to the date of the filing of the bills in the office of the Secretary of State, the vital question is the date of adjournment, and this reduces itself to another, namely, how that is to be proved, whether by the legislative journals, or extraneous evidence. It is admitted that no date subsequent to February 26th is disclosed by the journal or any record or memorandum of either house of the legislature, and that both records show adjournment on that day. There is no uncertainty or ambiguity whatever in these records. Under such circumstances, extraneous evidence to impeach the written record is inadmissible. *Wise* v. *Bigger,* 79 Va. 269; *State* v. *Abbott,* 59 Neb. 106; *Webster* v. *Hastings,* 59 Neb. 563; *In re Granger,* 59 Neb. 260; *State* v. *Smith,* 44 Ohio 348; *State* v. *Moffitt,* 5 Ohio 363. If the legislature has failed to make any record of its adjournment, or its records are in such a state of confusion as to render ascertainment of the date impossible, then resort may be had to other evidence, but not otherwise. *Crocker* v. *Junkin,* 113 N. W. 256. The common practice of staying the hands of the clock, to enable the legislature to effect an adjournment apparently within the time fixed by the constitution for the expiration of the term, is dwelt upon in the argument as a serious trespass upon the rights of the executive, in respect to the time allowed him for examination of, and action upon, bills undisposed of by him at the time of adjournment, it being pointed out that he might thus be deprived of the entire period of five days. In point of fact, no serious curtailment of this period has ever occurred in the history of the state, and the assumption that it will ever occur would be a violent and highly improbable one. If it should, the resultant evil might be slight, as compared with that of altering the probative force and character of legislative records, and making the proof of legislative action depend upon uncertain oral evidence, liable to loss by death or absence, and so imperfect on account of the treachery of memory. Long,

long centuries ago, these considerations of public policy led to the adoption of the rule, giving verity and unimpeachability to legislative records. If that character is to be taken away for one purpose, it must be taken away for all, and the evidence of the laws of the state must rest upon a foundation less certain and durable than that afforded by the law to many contracts between private individuals, concerning comparatively trifling matters. The constitution was adopted by the people, with full knowledge of the existence of this rule of evidence, and no provision was inserted to protect the Governor or any person else from its operation and effect. How can we say they did not think it better for the public, to take the risk of slight, or even great, abuse or perversion of it, than to innovate upon the rule, or that they did not rightly and safely assume that no substantial encroachment would ever be made by the legislature upon the time of the executive in this way? In more than forty-five years, it has never yet occurred. The few hours so taken is, in a practical sense, no encroachment at all, since the Governor and legislature may both work at the same time. If the evil should grow and become serious, the power of remedy is in the hands of the people rather than those of the courts.

It is said the journal of the senate, properly interpreted, shows an adjournment could not have occurred on or before midnight of February 26th, because a large amount of business was transacted, after a recess, terminating at 11:40 o'clock, P. M., of that day. Some four or five reports of committees on enrolled bills and the report of a conference committee on the appropriation bill, were received and acted upon, and there were two roll calls, after that time. All this is remote and merely argumentative. What business was transacted is one thing. The time of adjournment is another. The journal says the legislature adjourned on the 26th. This covers the point in issue. A mere uncertain inference cannot prevail over it. The court does not judicially know how much legislative business can be transacted in twenty minutes.

It has been suggested, in argument, that the day of adjournment, shown by the record, extended to noon of February 27th. We are unable to concur in this view. The day indicated by the journals is a calendar day, a day of the month and year, not a day of the session. Even if we could say the forty-five day con-

65 W Va.

stitutional period extended to noon of February 27th, it would be immaterial. The date of adjournment, and the date of expiration of that period are different things. The Governor is not allowed, for veto purposes, five days after the expiration of the constitutional legislative period. His veto period is five days after adjournment, which might occur on any day in the forty-five day period.

Another contention is that, owing to an alleged irregularity in the legislative proceedings, shown by the journal, the bill did not pass. This is predicated on an amendment, made on the third reading, although the bill is shown to have had its first and second readings in both houses. We are aware of no law, constitutional or otherwise, requiring a repetition of the readings of bills in their entirety, when amendments are made at late stages of the proceedings.

Being of the opinion that none of the bills in question were vetoed, we awarded the writs.

*Writs Awarded.*