THE STATE ROAD COMMISSON OF WEST VIRGINIA, *A Corporation v.* WEST VIRGINIA BRIDGE COMMISSION, *A Corporation, et al.*

(No. 7443)

Submitted September 8, 1932.   Decided September 20, 1932.

*H. B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for relator.

*Poffenbarger & Poffenbarger* for respondents.

HATCHER, PRESIDENT:

At an Extraordinary Session of the Legislature convened by the Governor on July 12, 1932, an Act was passed over his veto abolishing the West Virginia Bridge· Commission and transferring its functions to the State Road Commission. The Bridge Commission has refused to recognize this Act, and the Road Commission seeks compulsory recognition in this proceeding.

The defense of the Bridge Commission and the veto of the Governor are based on the same grounds: i. e. that the abolition of the commission was not included in the business stated in the proclamation which called the session, and that the Act is accordingly unconstitutional.

The statutory annals of the Bridge Commission are short and simple. It was created in 1929. See Acts of that year, chapter 8. The enactment awarded each commissioner an annual salary of $1,000 to ''be paid solely from funds provided under the authority of this act'' (presumably by tolls from bridges). However, the Budget Bill for the fiscal years ending June 30, 1932 and June 30, 1933, contained an approporiation of $12,000 for each year to pay salaries of the members of the Bridge Commission, its expenses, etc. Acts 1931, pp. 219-220.

Any observations on the Constitution would perhaps be trite. But at the risk of triteness it is necessary to restate occasionally for the benefit of memories which lapse, the position of the Constitution in our scheme of government.

Broadly stated, the Constitution is a staunch declaration by the people themselves of their inherent rights and a circumscribed delegation by them of governmental powers to the several agencies therein appointed. Those agencies have no being apart from that instrument, and obviously cannot be greater than their creator. As early as 1793 it was established in Virginia in the case of *Kamper* v. *Hawkins,* 1 Va. Cases 20, that the constitution of the state was ''the first law of the land * * * the fundamental law''; that the legislature was subordinate to the constitution; and that ''no legislative act therefore, contrary to the constitution, can be valid.'' Judge Nelson expressed his conclusion in the following quaint but striking language: ''I ask then whether the legislature do not sit under the constitution? The answer in the affirmative to me is inevitable.'' To my knowledge this conception of the relation between constitution and legislature has never since been questioned, and has been confirmed expressly in *Capito* v. *Topping,* 65 W. Va. 587, 591, 64 S. E. 845. See generally 12 C. J., subject Constitutional Law, secs. 1 and 9.

This paramount law (the constitution) warns that "any departure therefrom or violation thereof under the plea of necessity or any other plea, is subversive of good government and tends to anarchy and despotism" (Constitution, Art. 1, sec. 3). To prevent such subversion and tendency "every person elected or appointed to any office" in West Virginia is required to make oath as to an overlord, that he will support "the Constitution of this State" (Article IV, sec. 5).

While full legislative power is lodged in the legislature (Article VI, sec. 1), the scope of that power at an extraordinary session is definitely restricted by this dominant law, as follows: "The Governor may, on extraordinary occasions, convene at his own instance, the Legislature; but when so convened it shall enter upon no business except that stated in the proclamation by which it was called together." (Article VII, sec. 7). The policy of this section needs no forensic support; but in passing we note the following justification by the supreme court of Tennessee: "This undoubtedly is a very salutary provision, tending somewhat to check over-legislation, and to render laws a little more stable." *Mitchell* v. *Turnpike Co.*, 3 Hump. 456, 460-1. The language of this section is without ambiguity, and its purpose to prevent enactments not germane to subjects stated in the call is too plain for controversy. *Jones* v. *State*, 154 Ark. 288, 295; *Jones* v. *Theall*, 3 Nev. 233, 236. The section is also mandatory. *Capito* v. *Topping, supra; Fayette Co.* v. *Commissioners*, 18 Pa. Dist. Rep. 217, 222; *McClintock* v. *Phoenix*, 24 Ariz. 155; *Wells* v. *Ry. Co.*, 110 Mo. 286; *Jones* v. *The State*, 151 Ga. 502, 504-5; *Railroad Co.* v. *Wolfe*, 61 Neb. 502; Cooley's Constitutional Limitations (8th Ed.), 325-6; 25 R. C. L., subject Statutes, sec. 56. The expediency of the Act is not a matter of judicial inquiry. *State Road Commission* v. *County Court* (W. Va.) 163 S. E. 815; *Slack* v. *Jacob*, 8 W. Va. 612. We have only one problem—if the subject matter of the Act is within the proclamation which convened the Legislature, the Act is valid; otherwise it is void, and this is determined by a comparison of the Act with the proclamation. There are

eleven items of business mentioned in the proclamation, but only items three and eight can possibly apply to this subject. They are as follows:

> *"Third:* The revision of salaries paid all public officials now fixed or authorized by general or special statute.
>
> (Broadened later to include every salary paid from public funds.)
>
> &ast;   &ast;   &ast;
>
> *Eighth*: An emergency revenue measure to balance the state budget, and to raise an additional sum of five hundred thousand dollars, or such part thereof as may be deemed proper, to be applied to the relief of unemployment over a specified period, and to pay the expenses of this session, such revenue to be raised by indirect taxation by a special tax on cigarettes and/or other forms of tobacco and other luxuries, no part of the revenue for such purposes to be raised by a direct property tax."

It is manifest that the above items do not refer in terms to the abolition of an office. But in comparing the Act with the proclamation, our duty requires us to give to the latter any reasonable construction possible, by which it will include the Act. *State Road Commission* v. *County Court, supra; State* v. *Shores,* 31 W. Va. 491, 498, 7 S. E. 413; *Slack* v. *Jacob, supra.* The suggestion is made that item three is capable of such construction. Webster's New International Dictionary defines the word *revision* as a "re-examination or careful reading over for correction or improvement." This definition expresses both the popular and the legal notion of the word. The right to revise—*to correct or improve*—does not imply the right to destroy. To the contrary, an object destroyed is not capable of revision; its existence must continue if it is to be corrected or improved. Therefore, item three supports only the determination of compensation for officials.

Item three, however, may be correlated with the opening line of item eight, which directs consideration of "An emergency revenue measure to balance the state budget." (The message of the Governor to the Legislature under Art. VII, sec. 6, explained that the budget "now shows a deficit caused

by \* \* \* an unforeseen falling off in the state's revenue''.) The arrangement of the words in item eight gives special prominence to the revenue measure. But the purpose of the proclamation in counselling both the revision of salaries and the passage of a revenue measure was mainly to secure a balance of the budget. That balance was an important end to be achieved, and the revision of salaries and the revenue measure were but suggested means to that end. It is therefore apparent that balancing the budget was in fact a business stated in the proclamation. True it is, that His Excellency contemplated effecting such balance only through the reduction of salaries and the revenue measure. But it is settled law that the contemplation or recommendation of a governor is ''regarded as advisory only'' which the legislature may accept or reject at its discretion. *The People ex rel.* v. *Johnson,* 23 Colo. 150. In authorizing a governor to state the business of an extraordinary session and in limiting legislative action to that specific business the constitution does not confer on him one jot of legislative power. The constitution vests that power exclusively in the Senate and House of Delegates, whether the session be regular or extraordinary.

The brief of respondent takes the position that even if balancing the budget is within the scope of the proclamation, ''the budget does not extend to or include anything but appropriations and revenues \* \* \* and the balancing of the budget can be effected \* \* \* only by action upon appropriations and revenues \* \* \* and the abolition or consolidation of offices, transference of official functions and powers, and reorganization of the government thereby, either wholly or partially are not within the subject. Nor are the offices or commissions themselves. To include them, the phrase would have to travel or extend beyond its subject and into other domains.'' We are indebted to the Superior Court of Pennsylvania for a very complete statement of the law on this subject as follows:

''Although a governor who has decided to convene a special session of the legislature is empowered to proclaim, to indicate, to designate the subjects for

legislative consideration at such session, he cannot by his proclamation, any more than he can by his message to the same body when in regular session prescribe or limit the manner in which, or the extent to which the legislature may dispose of those subjects, which he designates in his proclamation as matters for legislative consideration. He may by proclamation in the one case, as message in the other, suggest the lines along which in his judgment the lawmaking body could most wisely or effectively operate. Such recommendations are in no wise restrictive of the legislative power. When, therefore, the governor, by his proclamation, couched in such language as he may select, has fairly indicated to the legislators and the people, a general subject for legislative consideration, the legislature, in special session, may lawfully deal with that subject as fully and completely as at a regular session." Likins's Petition (No. 2), 37 Pa. Sup. Court Rep. 636. On appeal this statement was adopted by the Supreme Court, 223 Pa. 468.

Accord: *In re Governor's Proclamation,* 19 Colo. 333, 336-7; *State* v. *Tillotson,* 43 Okla. 478, 481-2; *State* v. *Woolen,* 128 Tenn. 456, 488-9; *Chicago, etc.* v. *Wolfe,* 61 Neb. 502, 508; *Baldwin* v. *State,* 21 Tex. 591; *Baker* v. *Kaiser,* 126 Fed. 317, 321, 59 C. J. subject Statutes, sec. 20. If the Legislature had the authority to deal with this subject at the Extraordinary Session as broadly as the Pennsylvania and other courts declare, then it was not limited to the narrow approach advocated by the respondent.

The Constitution, Article VI, section 51, provides that the Legislature may amend the budget bill "by increasing or diminishing the items therein relating to the Legislature, and by increasing the items therein relating to the judiciary but except as hereinbefore specified, may not alter the said bill except to strike out or reduce items therein." Appropriations for the Bridge Commission do not relate to the Legislature or the judiciary, and could have been stricken out (by amendment) at the regular session in 1931. The deletion could have been accomplished then by implication as well as directly. (Amendments by implication are recognized in

Cooley, *supra,* 313, etc.; *Ex parte Settle,* 114 Va. 715; *State v. Cain,* 8 W. Va. 720; *Roby* v. *Sheppard,* 42 W. Va. 286, 26 S. E. 278.) The abolition of the Bridge Commission then would have impliedly amended the budget bill as to the appropriations for the Commission. Since consideration of that bill at the Extraordinary Session was reopened by the Governor's proclamation; and since the Legislature had the same powers relating to the subjects within the proclamation at the Extraordinary Session as it had at the Regular Session, we are impelled to hold that it could lawfully nullify the budget appropriations in favor of the Bridge Commission by the indirect method of abolishing the Commission. The transference of the duties of the Commission to another bureau is a mere incident to this amendment and cannot alone impair its validity.

Accordingly, the writ will issue.

*Writ awarded.*