STATE OF WEST VIRGINIA

*v.*

ORVIL Q. SCHOONOVER

(No. 12128)

Submitted January 24, 1962.   Decided March 13, 1962.

*George S. Sharp, Kay, Casto & Chaney,* for plaintiff in error.

*C. Donald Robertson, Attorney General, Simon M. Bailey, Assistant Attorney General,* for defendant in error.

GIVEN, JUDGE:

Defendant, Orvil Q. Schoonover, was convicted of false swearing by a jury, in the Intermediate Court of Kanawha County, and a sentence of twelve months in the Kanawha County jail was imposed. The Circuit Court of Kanawha County, though expressing some doubt as to the validity of the sentence, the doubt being as to a controlling question of law, refused a writ of error.

The indictment on which defendant was convicted charged that the defendant was subpoenaed by and appeared before The Crime Commission of West Virginia, and, after being sworn by the co-chairman of the commission, was asked questions concerning an issue within the proper jurisdiction of the Commission, including the specific question "Now, he [referring to Otha Alfred Eagle] has stated that he did not work for the State Road Commission for the months of October and November, in fact, he did not work for the State Road Commission from the 26th of September until the 9th of December, 1959, but during that particular period of time, he drew four checks, two of which checks—three of which checks were forged and that's the word he used, they were 'Forged.' his name was forged on them. Those are represented by Exhibit

157-156-158, on which below his endorsement, 'For deposit only Schoonover Service Station', and which you have previously examined. Now, I'll ask you to look at Otha Alfred Eagle's signature and ask you if you signed his name to those checks?'' The indictment then alleges that defendant ''* * * testified, deposed and swore wilfully, falsely, corruptly and unlawfully in answer to said question, 'No. I didn't sign those—', when in truth and in fact the said Orvil Q. Schoonover had signed the name of Otha Alfred Eagle to the checks referred to in said question. Whereupon the said Orvil Q. Schoonover did then and there before the said The Crime Commission of West Virginia then and there in session, as aforesaid, in the County aforesaid, unlawfully, wilfully and corruptly swear falsely, against the peace and dignity of the State.''

Numerous questions are raised and errors assigned, as to alleged prejudicial actions of the trial court in the trial of the case. These questions become immaterial and improper for consideration here, however, since we have reached the conclusion that The Crime Commission of West Virginia was not constitutionally created, and had no legal existence.

At the general election held in November, 1954, the pertinent provision of the Constitution, Article VI, Section 22, was adopted. It reads: ''The regular session of the Legislature held in the year one thousand nine hundred fifty-five and every second year thereafter shall not exceed sixty days, and the regular session held in the year one thousand nine hundred fifty-six and every second year thereafter shall not exceed thirty days. During any thirty-day session the Legislature shall consider no other business than the annual budget bill, except such as may be stated in a proclamation issued by the Governor at least ten days prior to the convening of the session, or such business as may be stated by the Legislature on its own motion in a concurrent resolution adopted by a two-thirds vote of the members elected to each house. All regular

sessions may be extended by the concurrence of two-thirds of the members elected to each house."

Pursuant to the provisions of the constitutional amendment, the Governor of the State, on December 31, 1959, issued his proclamation setting forth the "business to be considered by the Legislature at its regular thirty-day session commencing January 13, 1960, in addition to the annual budget bill". The proclamation contained numerous items of business to be considered, but the only item that could possibly relate to the business of such a resolution as the one here involved, and the only one contended by the State to have any possible application, is contained in Item 2, in this language: "Legislation to provide additional state revenues to be used: (a) for the construction and maintenance of state roads and highways; (b) for purchase, development, improvement and expansion of state parks, state forests and scenic attractions; the reclamation of strip mined areas; the improvement of streams, and the development of recreational areas and facilities; (c) to expand the department of public safety to the maximum strength authorized by law; and (d) for capital impovements at state institutions."

The parties have stipulated that the vote of each house on the resolution alleged to have created The Crime Commission of West Virginia, being house concurrent resolution No. 27, was, in the House of Delegates, seventy-two in favor of its adoption, and twenty-six against its adoption, and in the Senate seventeen for its adoption and thirteen against its adoption. It may here be noticed that the resolution was not adopted by a "two-thirds vote of the members elected to each house."

The basis for the resolution was stated to be for the purpose of "Providing for a comprehensive investigation into crime, vice and gambling in the State of West Virginia to ascertain the extent of such activities and whether legislation is needed to facilitate the discovery of such and the prosecution of persons involved", and

the resolution stated that The Crime Commission of West Virginia "* * * is hereby created to conduct a comprehensive and detailed investigation into the existence of crime, vice and gambling in the State of West Virginia, including, but not limited to, the methods and places of operation, persons engaged in such activities, directly or indirectly, and particulary persons holding any sort of state or local government position who may be in any way connected with such activities." Full powers for organization and operation of the commission were provided, including the powers to subpoena, swear and examine witnesses, and the commission was required to "* * * make reports to the members of the Legislature by mail from time to time as it shall deem advisable, and shall on or before September 1, 1960, make an interim report by mail to the members of the Legislature embracing its findings and recommendations to that time. Not later than the third week after convening of the regular session of the Legislature in the year one thousand nine hundred sixty-one, the commission shall make a final report to the Legislature and shall include in such report such findings and recommendations as it shall deem pertinent and shall include in such reports drafts of any proposed legislation which it deems necessary to carry the recommendations of the commission into effect."

The statute under which the indictment was drawn, Code, 61-5-2, reads: "To wilfully swear falsely, under oath or affirmation lawfully administered, in a trial of the witness or any other person for a felony, concerning a matter or thing not material, and on any occasion other than a trial for a felony, concerning any matter or thing material or not material, or to procure another person to do so, is false swearing and is a misdemeanor."

In attempting to determine the validity or constitutionality of the resolution of the Legislature, this Court must endeavor to find some reasonable basis for holding the same valid, for the simple reason that any

act of that coordinate branch of our government is presumed to be within its powers and valid. See *Bennett v. Bennett,* 135 W. Va. 3, 62 S. E. 2d 273; *State by Davis v. C. H. Musselman Co.,* 134 W. Va. 209, 59 S. E. 2d 472; *State Road Commission of West Virginia v. County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815; *Bates v. State Bridge Commission,* 109 W. Va. 186, 153 S. E. 305; *Eureka Pipe Line Co. v. Hallanan,* 87 W. Va. 396, 105 S. E. 506, 257 U. S. 265, 66 L. Ed. 227, 42 Sup. Ct. 101; *Charleston and South Side Bridge Co. v. Kanawha County Court,* 41 W. Va. 658, 24 S. E. 1002. There can be no doubt, of course, that the power to investigate, or to legislate, as to criminal offenses, falls within the general powers of the Legislature. See *State Road Commission of West Virginia v. West Virginia Bridge Commission,* 112 W. Va. 514, 166 S. E. 11; *Sullivan v. Hill,* 73 W. Va. 49, 79 S. E. 670. The question involved, however, is not whether the subject matter of the resolution, or the attempted investigation by The Crime Commission of West Virginia, falls within the general powers of the Legislature, but whether the adoption of the particular resolution is prohibited by the quoted constitutional amendment at the so called short session of the Legislature. In other words, does not the constitutional amendment prohibit the Legislature from exercising such power or consideration of such "business", at such a session, where not included in the proclamation of the Governor, if not approved by a two-thirds vote of each House?

The State relies heavily on the holding in *State Road Commission of West Virginia v. West Virginia Bridge Commission,* 112 W. Va. 514, 166 S. E. 11. There was involved in that case the validity of an Act of the Legislature which abolished the West Virginia Bridge Commission. The Act was passed, over the veto of the Governor, at an "extraordinary" session called by the Governor, pursuant to authority of Section 7, Article VII of the State Constitution. That section precluded the Legislature from considering any "business" not stated in the proclamation of the Governor.

The Court, stating that the Act would be void if not included in the business designated in the proclamation, found that it was actually included, and held the Act valid, stating: "The language of this section [Sec. 7, Article VII, State Constitution] is without ambiguity, and its purpose to prevent enactments not germane to subjects stated in the call is too plain for controversy. *Jones v. State,* 154 Ark. 288, 295; *Jones v. Theall,* 3 Nev. 233, 236. The section is also mandatory. *Capito v. Topping, supra; Fayette Co. v. Commissioners,* 18 Pa. Dist, Rep. 217, 222; *McClintock v. Phoenix,* 24 Ariz. 155; *Wells v. Ry. Co.,* 110 Mo. 286; *Jones v. The State 151 Ga. 502, 504-5; Railroad Co. v. Wolfe,* 61 Neb. 502; Cooley's Constitutional Limitations (8th Ed.), 325-6; 25 R.C.L., subject Statutes, sec. 56. The expediency of the Act is not a matter of judicial inquiry. *State Road Commission v. County Court* (W. Va.), 163 S. E. 815; *Slack v. Jacob,* 8 W. Va. 612. We have only one problem—if the subject matter of the Act is within the proclamation which convened the Legislature, the Act is valid; otherwise it is void, and this is determined by a comparison of the Act with the proclamation * * *". The Court concluded: "The abolition of the Bridge Commission then would have impliedly amended the budget bill as to the appropriations for the Commission. Since consideration of that bill at the Extraordinary Session was reopened by the Governor's proclamation; and since the Legislature had the same powers relating to the subjects within the proclamation at the Extraordinary Session as it had at the Regular Session, we are impelled to hold that it could lawfully nullify the budget appropriations in favor of the Bridge Commission by the indirect method of abolishing the Commission * * *".

In that case, however, the Court found that the overall purpose of the convening of the extraordinary session was the consideration of "An emergency revenue measure to balance the state budget", and that there existed an "unforeseen falling off in the state's revenue". The dominant business before the Legislature at that session being the raising of revenues for the

purpose of balancing the budget, and since the abolishing of the Bridge Commission and the elimination of the payment of salaries and other expenses would directly aid in the accomplishment of that purpose, the method of accomplishing such purpose was wholly and exclusively a matter for the Legislature.

Clearly, we think no such reasoning can be adapted or applied in the instant case. The results of such a resolution or investigation could have had no effect on any question concerning revenues then before the Legislature. The final report of the commission, in fact, was not to be made until "Not later than the third week after convening" of a future regular session of the Legislature. Any indirect effect on such revenues would be purely problematic. Moreover, to say that the mentioning of revenues in connection with businesses specifically included in the proclamation would open up for consideration at such a session all fields of legislation touching the revenues, practically every type or class of legislation, and would completely thwart or circumvent the very purpose of the constitutional amendment, the limiting of the exercise of legislative powers at such a session, as such purpose is disclosed by clear and unambiguous language contained in the amendment. The mandate of the people, so clearly expressed, should not be ignored or circumvented on imaginary grounds, in fact, it should be ignored on no ground.

A very similar situation arose in the case of *People v. Curry,* 130 Cal. 82, 62 P. 516. There the pertinent statutory provision required that the Governor of the State, in calling the Legislature into "extraordinary" session, state in the proclamation the purposes for which it was convened, and that the Legislature, when so convened, "shall have no power to legislate on any subjects other than those specified in the proclamation". At such session the Legislature proposed an amendment to the Constitution, a subject not included in the call, but within the general powers of the Legislature. The attempted action of the Legislature was held invalid, the Court saying: "The evident purpose

of the restriction placed upon the action of the legislature when called together in extaordinary session by proclamation was to regulate the duration of such session, and thus diminish expenses, and the court should not, by a strained or strict construction, defeat these purposes." See *Swing v. Riley*, 13 Cal. 2d 513, 90 P. 2d 313; *Commonwealth v. Hillenbrand*, 96 Ky. 407, 29 S. W. 287; *Ex Parte Wolters* (Texas), 144 S. W. 531. Undoubtedly our own case of *State Road Commission of West Virginia v. West Virginia Bridge Commission*, 112 W. Va. 514, 166 S. E. 11, is to the same effect. Therein it was stated that the language of the constitutional provision involved was "without ambiguity, and its purpose to prevent enactments not germane to subjects stated in the call is too plain for controversy * * * The section is also mandatory * * * if the subject matter of the Act is within the proclamation * * * the Act is valid; otherwise it is void".

Obviously, if The Crime Commission of West Virginia was not constitutionally created, the defendant could not be convicted of false swearing as to testimony purportedly given before it. See *State Road Commission of West Virginia v. County Court of Kanawha County*, 112 W. Va. 98, 163 S. E. 815; *Sullivan v. Hill*, 73 W. Va. 49, 79 S. E. 670; *Commonwealth v. Hillenbrand*, 96 Ky. 407, 29 S. W. 287; *Sweezy v. New Hampshire*, 354 U. S. 234, 77 Sup. Ct. 1203, 1 L. Ed. 2d 1311; *Braden v. United States*, 365 U. S. 431, 81 Sup. Ct. 584, 5 L. Ed. 2d 653; *Watkins v. United States*, 354 U. S. 178, 77 Sup. Ct. 1173, 1 L. Ed. 2d 1273; *Emspak v. United States*, 349 U. S. 190, 75 Sup. Ct. 687, 99 L. Ed. 997; *Quinn v. United States*, 349 U. S. 155 Sup. Ct. 668, 99 L. Ed. 964, 51 A.L.R. 2d 1157.

The judgments of the Circuit Court of Kanawha County and the Intermediate Court of Kanawha County are reversed, the verdict of the jury set aside, and the case is remanded.

*Judgments reversed; verdict set aside and case remanded.*