NED H. TANNER

*v.*

PREMIER PHOTO SERVICE, INC.

and

C. HOWARD HARDESTY, JR., TAX
COMMISSIONER and INTERVENOR

(No. 12158)

Submitted March 27, 1962.          Decided April 3, 1962.

Opinion Filed May 29, 1962.

*C. Donald Robertson,* Attorney General, *Andrew J. Goodwin,* Assistant Attorney General, for appellant.

*Richard F. Pence, Jack L. Miller, James W. Simonton,* for appellee.

GIVEN, JUDGE:

Involved in this proceeding is the constitutionality of the West Virginia Personal Income Tax Act, Chapter 155 of the 1961 Acts of the Legislature, Regular Session, Code, 11-21, as amended. The plaintiff, Ned H. Tanner, instituted his proceeding in the Circuit Court of Wood County, praying that his employer, Premier Photo Service, Inc., be restrained from collecting any withholding tax from the wages of plaintiff, and that the Act be adjudged unconstitutional. The circuit court held the Act unconstitutional and void. C. Howard Hardesty, Jr., Tax Commissioner of the State of West Virginia, as intervenor, brought the proceeding to this Court for review. This Court, by order entered on the third day of April, 1962, reversed the judgment of the Circuit Court of Wood County and remanded the proceeding, with directions, stating in the order that an opinion would be filed at a later date.

At a pre-trial conference the issues before the trial court were reduced to nine. On motion for summary judgment made by the Tax Commissioner, the court sustained the motion as to seven of such issues, and overruled the motion as to the other two of such issues. We think that any question relating to the seven issues has been effectively abandoned by plaintiff. No cross-assignment of error was made, and we find no necessity for further mentioning any question not arising from the issues argued before this Court.

The two issues, as stated in the pre-trial order, are, first, that: "Said Act was not validly enacted by the Legislature of West Virginia, in that the provisions of Article VI, Section 29, of the Constitution of West Virginia were not complied with, since the House of Delegates did not expressly define 'a case of urgency' and the Internal Revenue Code of 1954 was never read by the House of Delegates at the passage of the bill", and, second, that: "Said Act violates Article X, Section 1, of the Constitution of West Virginia, in that it allows more exemptions than said article and section of the Constitution of West Virginia sets forth, and

permits classification and rate graduation on a basis other than the amount of the income."

Article VI, Section 29, of the State Constitution, reads: "No bill shall become a law, until it has been fully and distinctly read, on three different days, in each House, unless, in case of urgency, by a vote of four-fifths of the members present, taken by yeas and nays on each bill, this rule be dispensed with: Provided, in all cases, that an engrossed bill shall be fully and distinctly read in each House."

Article X, Section 1, of the State Constitution, in so far as appears pertinent, reads: "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law * * * [here described are numerous exceptions] The legislature shall have authority to tax privileges, franchises, and incomes of persons and corporations and to classify and graduate the tax on all incomes according to the amount thereof and to exempt from taxation, incomes below a minimum to be fixed from time to time, and such revenues as may be derived from such tax may be appropriated as the legislature may provide."

The Act in question, the "West Virginia Personal Income Tax Act", Chapter 155 of the 1961 Legislature, Regular Session, Code, 11-21, as amended, became effective February 10, 1961. It contains ninety-four sections, many of which contain numerous subsections or paragraphs, dealing with practically every pertinent phase of a State Personal Income Tax Law. Obviously, we need to point out only certain provisions thereof giving rise to, or affording answer to, the questions here involved.

A legislative finding, stated in Section 1 of the Act, is to the effect that "the adoption by this state for its personal income tax purposes of the provisions of the laws of the United States relating to the determination of income for federal income tax purposes will (1) simplify preparation of state income tax returns by taxpayers, (2) improve enforcement of state income tax through better use of infor-

mation obtained from federal income tax audits, and (3) aid interpretation of the state tax law through increased use of federal judicial and administrative determinations and precedents."

Section 3 of the Act imposes an income tax "for each taxable year on the West Virginia taxable income of every individual, estate and trust", and Section 4 provides that the rate of the tax "shall be equal to six per centum of the federal income tax which would be imposed on an identical amount of federal taxable income under" Section 1 of the United States Internal Revenue Code of 1954, with certain exceptions detailed, not material here. Section 9 provides that "all amendments made to the laws of the United States prior to the first day of January, one thousand nine hundred sixty-one, shall be given effect in determining the taxes imposed by this article but no amendment to laws of the United States made after said date shall be given effect."

Numerous sections of the Act deal with the manner of procedure in arriving at the amount of taxable income of a taxpayer under the Act, such as personal exemptions, deductions, or other credits allowable against gross income. It is clear, we think, that for the most part such exemptions, deductions and credits are intended to reach the same result as to taxable income under the State Act as the taxable income resulting from an application of the federal income tax laws, the exceptions, generally, at least, resulting from the differences in the powers of the taxing sovereignties.

The Act provides for the manner of making reports and returns by the taxpayer, the withholding of estimated taxes by employers, the collection of the tax by the State Tax Commissioner, and vests in such commissioner the authority to "administer and enforce the tax herein imposed and shall issue all needful regulations, rules and interpretations thereof."

The first issue quoted above raises two questions as to the constitutionality of the Act: First, it is contended that unconstitutionality results from the fact that the Legislature did not, in the enactment of the Act as "urgency" legis-

lation, define the existing "urgency" or record such finding in the house journal as required by the constitutional provision, and, second, that the failure to read in full the United States Internal Revenue Code of 1954, mentioned in the Act, violates the provisions of Section 29 of Chapter VI of the State Constitution, quoted above, providing that "no bill shall become a law, until it has been fully and distinctly read, on three different days", it being admitted that the United States Internal Revenue Code of 1954, though mentioned in the bill being considered was never read in the House of Delegates.

The questions posed as to the first quoted issue relate only to the procedure in the House of Delegates, not to any procedure in the State Senate. The particular bill, Senate Bill No. 106, was duly passed in the senate, and, by unanimous consent, the bill was received by the house, read, and ordered to a second reading. The first reading was on February 9, 1961. On February 10, 1961, the house journal shows that the particular bill, "On second reading, coming up in regular order, was read a second time and ordered to third reading". Immediately after the second reading, on the same day, a motion was duly made by Mr. Brotherton, a member of the house, "that the constitutional rule requiring the bill to be fully and distinctly read on three different days be dispensed with", which motion carried unanimously. It is significant that the motion was based on the "constitutional" rule, which of necessity related to the existence of an "urgency". After receipt of the vote on the motion to suspend, the journal shows that, "So, four-fifths of all the members present having voted in the affirmative, the constitutional rule was dispensed with", and that "The bill was then read a third time and put upon its passage", and was passed by the necessary majority. In so far as the present legislative procedural question is concerned, therefore, it may be answered by determining whether the pertinent statements found in the house journal constitute an uncontradictable verity, and, if not, whether the quoted statements from the journal are of doubtful meaning and controlled by other or extrinsic evidence. In the instant case no extrinsic evidence was offered, and we find nothing

in the journal of the house which conflicts with the quoted statements. Therefore, the only remaining pertinent procedural question is whether the statements quoted, or the necessary inferences or presumptions arising, establish the necessary compliance with the constitutional provision.

In *State* v. *Heston,* 137 W. Va. 375, 71 S. E. 2d 481, we held: "4. The journals of the two houses of the Legislature and other legislative records, when clear and unambiguous, are presumed to be correct and the contrary must be clearly and convincingly established to overcome such presumption; and when such records are clear and free from ambiguity or conflict extrinsic evidence can not be admitted to impeach them or to overcome the presumption that they are correct." See *State ex rel. Armbrecht* v. *Thornburg,* 137 W. Va. 60, 70 S. E. 2d 73; *Charleston National Bank* v. *Fox,* 119 W. Va. 438, 194 S. E. 4; *Combs* v. *City of Bluefield,* 97 W. Va. 395, 125 S. E. 239; *Anderson* v. *Bowen,* 78 W. Va. 559, 89 S. E. 677; *Capito* v. *Topping,* 65 W. Va. 587, 64 S. E. 845, 22 L.R.A., N. S., 1089.

In the *Thornburg* case, after considering numerous authorities and theories, this Court said: "From these decisions it clearly appears, we believe, that this Court early adopted, and has continuously followed, a rule permitting the Court, in determining whether the Legislature has complied with the constitutional requirements in the consideration or passage of a bill, to look to the journals and to other official records and, in the event of patent ambiguity in such records, to hear and determine the question of the constitutionality of the act by aid of extrinsic evidence."

As above noticed, the pertinent constitutional provision does not expressly require that an "urgency" be stated in the journal, or that it be specifically defined, or stated to exist. In *People ex rel. Scearce* v. *Glenn County,* 100 Cal. 419, 35 P. 302, 303, the Court, considering a very similar constitutional provision, said: "* * * But the constitution does not undertake to provide the form, or to set limitations to the manner, in which the dispensing power shall be exercised. The words are simply: 'Unless, in a case of urgency, two-thirds of the house where such bill may be

pending shall, by a vote of yeas or nays, dispense with this provision.' It merely provides that a bill shall be read on three different days in each house, unless such house, by a two-thirds vote, shall, in some appropriate form, dispense with that necessity. This was done in the case at bar with respect to the bill in question, the bill being expressly named in the resolution. The main virtue of the provision is evidently the requirement of a two-thirds vote * * *".

The authorities cited, we believe, lay down the acceptable rule, that in the absence of any clear journal record of a finding, or if the journal is silent, as to the existence of an urgency, it must be presumed from such a motion as made in the house, relating to the legislation here involved, the vote thereon as required, and the passage of the bill, that such a constitutional provision was duly complied with. Moreover, in the instant case, we reach the conclusion that the facts recorded in the journal, quoted above, are sufficient to establish a consideration and finding by the House of Delegates of the existence of an urgency.

As to the contention that the Legislature, in the suspension of the reading of a bill on three separate days because of the existence of an "urgency", must define or describe the existing urgency, and that the journal must show such fact, the authorities are somewhat divided, this Court, seemingly, never having determined the precise question.

We believe, however, the correct rule is laid down in *State ex rel. Kohlman* v. *Wagner,* 130 Minn. 424, 153 N. W. 749, wherein it is held, with reference to the question here involved, arising under a constitutional provision to the same effect as that of our own Constitution, that: "8. No particular formality is necessary to dispense with this rule. Action of the house, the necessary effect of which was to order a third reading of the bill and to place it on its final passage, and the passage of the bill by a vote of more than two-thirds of all the members of the house, operated to dispense with the rule." In the opinion the Court said: "Mere silence of the journal will not 'convict the Legislature of having violated the Constitution.' "

In 50 Am. Jur., Statutes, Section 81, it is stated: "A constitutional provision that a bill shall be read on three separate days in each house, in order to have the force of law, does not require that everything which is to become a law by the adoption of the bill shall be thus read; it is enough to read the bill alone. Thus, a code of laws adopted by a statute need not be read as a part of the statute adopting it".

In Cooley's Constitutional Limitations, Eighth Edition, Volume One, page 287, it is stated, in relation to this point, that "It is required by the constitutions of several of the States, that no bill shall have the force of law until on three several days it be read in each house, and free discussion allowed thereon; unless, in case of urgency, four-fifths or some other specified majority of the house shall deem it expedient to dispense with this rule. The journals which each house keeps of its proceedings ought to show whether this rule is complied with or not; but in case they do not, the passage in the manner provided by the constitution must be presumed, in accordance with the general rule which presumes the proper discharge of official duty". See *People ex rel. Scearce* v. *Glenn County,* 100 Cal. 419, 35 P. 302; *State ex rel. Buford* v. *Carley,* 89 Fla. 361, 104 So. 577; *Hull* v. *Miller,* 4 Brown (Neb.) 503; *State ex rel. Douglas County* v. *Frank,* 60 Neb. 327, 83 N. W. 74; *McClellan* v. *Stein,* 229 Mich. 203, 201 N. W. 209; *Missouri K. and T. Ry. Co.* v. *Simons,* 75 Kan. 130, 88 P. 551; *Weyand* v. *Stover,* 35 Kan. 545, 11 P. 355.

In the *Kohlman* case, *supra,* the Court relied, to some extent, on the presumption of regularity in the actions of a Legislature in the passage of a bill, which presumption has long existed, with persistent force, in this State. See the *Heston* and *Thornburg* cases, *supra,* and cases therein cited. In Cooley's Constitutional Limitations, Eighth Edition, Volume One, page 279, it is stated, in relation to this point, that "* * * whenever it is acting in the apparent performance of legal functions, every reasonable presumption is to be made in favor of the action of a legislative body; it will not be presumed in any case, from the mere silence of the journals, that either house has exceeded its authority, or

disregarded a constitutional requirement in the passage of legislative acts, unless where the constitution has expressly required the journals to show the action taken, as, for instance, where it requires the yeas and nays to be entered."

As to the contention of plaintiff that the Act is unconstitutional for the reason that it purported to adopt the United States Internal Revenue Code of 1954, no part of which was actually read on any day, it is perhaps sufficient to point out that no intention or attempt to enact, make or adopt that Code a part of the laws of this State is shown. The purpose of the reference to that Code is clearly stated in the finding of the Legislature to be only as an aid for the purpose of "determination of income", for the purpose of "simplifying" preparation of its returns, to "improve" enforcement of the State Income Tax Law, and to "aid interpretation of the state tax law". However, it may be pointed out that the general rule relating to such a constitutional provision does not require the reading of the statute or law specifically referred to for adoption as part of the enactment.

In 82 C.J.S., Statutes, Section 27, it is stated that "The reading contemplated by the constitution is the reading of the bill as drafted; and, hence, notwithstanding such a constitutional requirement, it is permissible, without reading the matter referred to, to pass an act adopting a revised code or body of laws, an act declaring valid and binding certain rules of the common law, or an act incorporating a corporation by mere reference to its constitution and by-laws theretofore adopted."

In *Santee Mills* v. *Query*, 122 S. C. 158, 115 S. E. 202, arising under a very similar constitutional provision, the Court there held: "5. South Carolina Income Tax Law March 13, 1922, requiring persons and corporations subject to the federal income tax to pay to the state as tax on income a sum equal to one-third of the federal income tax and incorporating by reference the provisions of the federal Income Tax Act and the rules of the Department of Internal Revenue effectuating it, does not, by its enactment of the federal Income Tax Law and the regulations for its enforcement by mere reference thereto, violate Const. S. C.

art. 3, § 18, providing that no bill or joint resolution shall have the force of law until it shall have been read three times and on three several days in each house, etc., nor Senate Rule 39, nor House of Representatives Rule 47, as to reading of a bill; for the 'reading' contemplated by the constitutional provision is the reading of the bill as drafted." See *Vest v. Cobb*, 138 W. Va. 660, 76 S. E. 2d 885; *Chapman v. The Huntington West Virginia Housing Authority*, 121 W. Va. 319, 3 S. E. 2d 502.

In Cooley's Constitutional Limitations, Eighth Edition, Volume One, page 289, relating to the point here involved, it is stated: "In the reading of a bill, it seems to be sufficient to read the written document that is adopted by the two houses; even though something else becomes law in consequence of its passage, and by reason of being referred to in it. Thus, a statute which incorporated a military company by reference to its Constitution and by-laws, was held valid notwithstanding the Constitution and by-laws, which would acquire the force of law by its passage, were not read in the two houses as a part of it. But there cannot be many cases, we should suppose, to which this ruling would be applicable".

The cautious warning that the adoption or enactment of laws by reference may not extend to "many cases" is worth noting, though the practice apparently has not been abused in this State. See 50 Am. Jur., Statutes, Section 36; Sutherland, Statutory Construction, Third Edition, Volume Two, Section 5207.

We think it clear, therefore, that there is nothing before us that establishes any action, or lack of action, on the part of the Legislature relating to the enactment of the West Virginia Personal Income Tax Act that necessitates a determination of unconstitutionality thereof. The question relating to the power of the Legislature with reference to the allowance of personal exemptions in an effort to reach the taxable income of the respective taxpayers, however, remains for consideration.

In approaching this problem it is well to keep in mind the principle that a State Constitution is an instrument of re-

striction or limitation of the powers of the Legislature, unlike the Federal Constitution which constitutes a grant of powers to the Congress. In *Harbert* v. *The County Court of Harrison County,* 129 W. Va. 54, 66, 39 S. E. 2d 177, 187, we stated: "The Legislature of this State, unlike the Congress of the United States under the Federal Constitution, does not depend for its authority upon the express grant of legislative power. The Federal Constitution is a grant of power; a State Constitution is a restriction of power. The Constitution of a State is examined to ascertain the restraints, if any, which the people have imposed upon the Legislature, not to determine the powers they have conferred. The Legislature of this State possesses the sole power to make laws and it is necessarily invested with all the sovereign power of the people within its sphere. *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985." The power of the State, therefore, is plenary and limitless, and beyond the reach of this Court, unless restricted by the State Constitution, in the enactment of any personal income tax law, or in the allowance of exemptions, or classifications or graduation of such taxes. *State Road Commission of West Virginia* v. *The County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815. The principle, of course, is subject to any grant of powers made by the Federal Constitution to the Congress, including the principle relating to due process.

We are also vigorously reminded of a duty to attempt to find a reasonable basis for sustaining any enactment of the Legislature, *State* v. *Schoonover,* 146 W. Va. 1036, 124 S. E. 2d 340, and also of the duty placed on the courts to declare any enactment unconstitutional which is determined to be clearly in violation of the organic law, a duty now recognized by all authorities, though always approached and exercised cautiously.

It can not be doubted, and we think it is not questioned in this proceeding, that the Act attempts to permit practically the same credits, deductions or exemptions against the gross income of the respective taxpayers, in an effort to reach the amount of the taxable income, as those allowed a federal income taxpayer by virtue of the provisions of the United States Internal Revenue Code of 1954. The Act,

however, recognizes or creates certain exceptions necessitated, perhaps, because of the different extent of the powers vested in the taxing sovereignties, for example, the State would have no power to tax facilities exclusively within the taxing powers of the Congress.

The only constitutional provision contended to restrict the power of the Legislature as to allowance of such credits or deductions against such a tax is that contained in Section 1 of Article X, quoted above, to the effect that the Legislature shall have authority to tax incomes of persons and to classify and graduate the tax, "and to exempt from taxation, incomes below a minimum to be fixed from time to time". It is significant that what is permitted to be exempted from taxation is "income" below a minimum to be fixed by the Legislature, not certain credits or exemptions declared or allowed for the purpose of finding the net or taxable income of the taxpayer. The minimum fixed by the Legislature, though in fact a part or the whole of the net income of a particular taxpayer, is made tax free. The purpose thereof, no doubt, is to release from the burdens of taxation that class of taxpayers least able to carry such burdens. To that extent the tax is not equal and uniform, but the exception is clearly stated and allowed by the constitutional provision.

The differences resulting in the class of exemptions make inapplicable the contended for rule of ejusdem generis, for the reason that the exemptions named in the constitutional provision are not "of the same general nature or class as those enumerated" in the United States Internal Revenue Code of 1954. Syllabus, Point 2, *Parkins* v. *Londeree, Mayor,* 146 W. Va. 1051, 124 S. E. 2d 471. Moreover, the rule is one to be applied only where doubt or ambiguity exists in the meaning of the language being considered, not where the meaning of such language is clear and definite. *Gauley Coal Land Co.* v. *Koontz,* 77 W. Va. 583, 87 S. E. 930. See 14 Words and Phrases, Permanent Edition, ejusdem generis.

The plaintiff concedes, as indeed he must, because of the plain constitutional provisions that the Legislature has the power to tax "incomes", to "graduate" the tax on incomes,

and to "classify" incomes according to the amount thereof, but contends further that the only exemption allowable is the minimum income to be fixed from time to time. In *Reed* v. *Bjornson,* 191 Minn. 254, 253 N. W. 102, involving a very similar question concerning exemptions allowable under a state income tax statute, the Court said: "The exemptions provided for by the act may be justified upon more theories than one. It may be said to be a further exercise of the power of classification. The expense of administration applied to small incomes may wholly justify the omissions. The omissions may be 'reasonably founded in the purposes and policy of taxation'. Watson v. State Comptroller of New York, 254 U. S. 125, 41 S. Ct. 43, 65 L. Ed. 170. As well said by the Supreme Court in quoting with approval from Cooley on Taxation: 'The right to make exemptions is involved in the right to select the subjects of taxation, and apportion the public burdens among them, and must consequently be understood to exist in the lawmaking power wherever it has not in terms been taken away. To some extent it must exist always, for the selection of subjects of taxation is of itself an exemption of what is not selected.' Cooley, Tax'n. 200." See *Jensen* v. *Henneford,* 185 Wash. 209, 53 P. 2d 607; Opinion of the Justices, 95 N. H. 537, 64 A. 2d 320; Opinion of the Justices, 99 N. H. 525, 113 A. 2d 547; *State* v. *Pinder,* 30 Del. 416, 108 A. 43; *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 130 N. E. 99; *Martin* v. *High Splint Coal Co.,* 268 Ky. 11, 103 S. W. 2d 711.

Though the precise constitutional question raised has not been determined by this Court, aid is obtained from certain cases deciding related questions, which decisions, we believe, very definitely point to the results stated in the order of this Court heretofore entered in this proceeding. In *Dickinson* v. *James, State Tax Commissioner,* 120 W. Va. 222, 197 S. E. 633, the constitutionality of a prior West Virginia personal income tax act was involved, the precise question involved being related only to a provision of the Act dealing with profits and losses occurring through sales of property. The Court held: "1. Under Section 1, Article X of the Constitution, authorizing the imposition of a tax on

the incomes of persons and corporations, the tax is limited to actual profits or gains realized in the tax year for which the taxpayer makes his return." The present significance of the holding appears to be that in determining the net income of the taxpayer, he was permitted to exclude from the gross income losses suffered in the sales of property. Other cases of this Court which are helpful are: *In Re: Hillcrest Memorial Gardens, Inc.,* 146 W. Va. 337, 119 S. E. 2d 753; *In Re: The Assessment of Shares of Stock of the Kanawha Valley Bank,* 144 W. Va. 346, 109 S. E. 2d 649; *In re: Tax Assessments against the Southern Land Co.,* 143 W. Va. 152, 100 S. E. 2d 555; *Central Realty Co.* v. *Martin,* 126 W. Va. 915, 30 S. E. 2d 720; *Arslain* v. *Alderson, State Tax Commissioner,* 126 W. Va. 880, 30 S. E. 2d 533; *In Re: Tax Assessment against Charleston Federal Savings & Loan Ass'n.,* 126 W. Va. 506, 30 S. E. 2d 513; *In Re: Tax Assessment against Hancock County Federal Savings and Loan Association,* 125 W. Va. 426, 25 S. E. 2d 543; *Christopher* v. *James, Tax Commissioner,* 122 W. Va. 665, 12 S. E. 2d 813; *Laing* v. *Fox, State Tax Commissioner,* 115 W. Va. 272, 175 S. E. 354.

As has been noticed, the tax imposed is a tax on the "West Virginia taxable income", and the several statutory provisions referred to make it clear that "taxable income" is not synonymous with "gross income". The controlling constitutional provision relating to taxation of incomes did not undertake to define or limit the ordinary meaning of "incomes" of persons and corporations, but left entirely to the Legislature the power and the policy of determining whether "incomes" to be taxed should be something different than the total or gross income. Such power of necessity includes the power of providing the manner or method of arriving at the amount of income to be taxed and as to "equal and uniform" taxation as to the different taxpayers, and also, of necessity, includes the power to determine what credits or deductions, (often referred to as exemptions), are reasonable and necessary to equally and uniformly adjust the tax burden of the respective taxpayers. Of course, if credits or deductions attempted to be allowed by statute should clearly amount to a discrimination, or a definite lack

of equality or uniformity, the same might be declared unconstitutional. No question of discrimination, however, appears in the instant proceeding.

Being of the views indicated, the final judgment of the Circuit Court of Wood County was necessarily reversed and the case was remanded with directions, as stated in the order of this Court.

*Reversed and remanded*
*with directions.*

CALHOUN, PRESIDENT:

The foregoing opinion was prepared by Judge Given, and after his death was approved by this Court. It is now announced in his name in the form prepared by him.