MR. CHIEF JUSTICE PRINGLE
dissenting:
I respectfully dissent. Since my earliest civics class in grammar school, I have been taught that our system of government consists of checks and balances between a legislative and an executive and judicial branch of government. It is no cliche to say that the people expect in matters of legislation that the Governor elected by all of the people of the state and a majority of a legislature consisting of senators and representatives separately selected by geographic districts agree on legislation before it becomes law. In the event such an agreement does not take place, then two-thirds of the separately selected legislators must agree before a bill can become law. This is the fundamental framework of our government. It is, in my view, the warp and woof of the checks and balances system and no rigid construction of a constitutional provision ought thwart that governmental design.
I am clear in my mind that the revisions in issue here were placed in the Colorado Constitution so that there could be no pocket vetoes and so that the people might know on what basis the Governor acted in exercising his veto power, thus, permitting them to make their judgments as to the correctness of his actions. For me, the holding that the time limits in these provisions are mandatory and are to be so rigidly applied frustrates those purposes. Here the vetoes and the reasons therefor were made public by the Governor before the time limit for filing with the Secretary of State had expired. Then and only a short time after the periods set forth in the constitutional provisions, which I view to be directory rather than rigidly *213 mandatory, the Governor did file his vetoes and his explanation thereof with the Secretary of State. There could be no possible injury to anyone as a result of the times within which the Governor took his action.
Now, as a result of the majority’s construction, bills not agreed to by the Governor and the majority of the Legislature become law. It is my view that when the Governor made public his vetoes with his reasons after adjournment in the case at bar, the purpose of the people in enacting the constitutional provisions was accomplished.
I do not interpret constitutional provisions as did Judge Poffenbarger upon whose opinion in Capito v. Topping, 65 W.Va. 587, 64 S.E. 845 (1909), the majority relies. Judge Poffenbarger grounded his opinion on the following philosophy which appears in the quoted cites in the majority opinion:
“[Constitutional provisions] to the extent of their duration, . . . define and limit the policy of the state more rigidly and unalterably than the sails and rudder of the ship, when set, govern and control its course.” (Emphasis supplied.)
Rather, I would rely on the great constitutionalist, the Chief Justice of the United States, John Marshall, when he said in McCulloch v. Maryland, 17 U.S. 579 (4 Wheat. 316),
“[w]e must never forget that it is a constitution we are expounding,” 17 U.S. at 601 (emphasis supplied).
“This provision is made in a constitution intended to endure for ages to come, and, consequently, to be adapted to the various crisis of human affairs.” 17 U.S. at 603 (emphasis supplied).
“Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.” 17 U.S. at 605.
I would adopt the doctrine of substantial performance to the Interrogatories propounded here and hold that the will and purpose of the people and the checks and balances system were effected by the vetoes here, and that the bills in questions are not law.